## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## FORT MEYERS DIVISION

| | |
|---|---|
| Donell L. Tillman, individually and on behalf of all others similarly situated | ) ) ) |
| Plaintiff | ) ) |
| v. | ) ) |
| Ally Financial Inc. | ) ) |
| Defendant | )   **Jury Demanded** |

### COMPLAINT - CLASS ACTION

Plaintiff, Donell L. Tillman, individually and on behalf of all others similarly situated, brings this action pursuant to the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*. ("TCPA") for violation by the Defendant, Ally Financial Inc.

### JURISDICTION AND VENUE

1. This Court has jurisdiction under 28 U.S.C. § 1331, 28 U.S.C. §1337, and 47 U.S.C. § 227 (TCPA).

2. Venue in this District is proper because the acts occurred here, Plaintiff resides here, and Defendant transacts business here.

### PARTIES & FACTS

3. Plaintiff Donell L. Tillman is, and at all times mentioned herein was, an individual citizen of the State of Florida, who resides in Fort Meyers Florida, which is located in the Middle District of Florida.

4. Ally Financial Inc. is headquartered in Detroit Michigan, and is one of the largest automotive financiers in the world.

5. Defendant Ally is authorized to conduct, and so regularly conducts, business in the State of Florida.

6. Plaintiff is, and at all times mentioned herein was a "person" as defined by 47 U.S.C. §153(39).

7. Ally is, and at all times mentioned herein was a "person" as defined by 47 U.S.C. §153(39).

8. On or around November 9, 2015 Plaintiff obtained a new cellular telephone service.

9. In or around December 2015, Plaintiffs received numerous telephone calls on his cellular telephone from Ally, seeking to reach an individual named Phillip Everett.

10. On at least one occasion in December 2015, Plaintiff notified Ally that Plaintiff was not Phillip Everett, that Phillip Everett could not be reached at Plaintiff's cellular telephone number, and requested that Ally cease further calls to Plaintiff.

11. Despite receiving notice that it was calling the wrong number, Ally continued to call Plaintiff's cellular telephone throughout January, February, and March 2016, including the following; two calls on January 20, 2016, four calls on January 21, 2016, three calls on January 30, 2016, three calls on February 1, 2016, three calls on February 2, 2016, a call on March 18, 2016, two calls on March 19, 2016, a call on March 21, 2016, a call on March 30, 2016, a call on March 31, 2016, and a call on April 11, 2016.

12.     At all times relevant herein, Plaintiff has been the user, and has exercised dominion and control of his cellular telephone number that received the subject calls which form the basis of this action.

13.     Ally placed all of the above referenced calls to Plaintiff's cellular telephone number using an "automatic telephone dialing system" ("ATDS"), as that term is defined by 47 U.S.C. § 227 (a)(1), meaning it had the capacity to store or produce numbers randomly or sequentially, and to dial such numbers, and to place telephone calls to Plaintiff's cellular telephone.

14.     Several of the calls placed to Plaintiff's cellular telephone number were placed using an artificial and pre-recorded voice message. For example, Ally telephoned Plaintiff's cellular telephone number and left the following pre-recorded message in Plaintiff's voice mail:

> …1, if not press 2. Para Espanol, oprima nueve. Please make your selection now.
> -Music-
> This is an important message from Ally Financial incorporated. If this is 'Phillip Everett' press 1, if not press 2. Para Espanol, oprima nueve. Please make your selection now.
> -Music-
> This is Ally Financial Incorporated calling for 'Phillip Everett' please call us at 1866-559-2107 as soon as possible. Again our number is 1866-559-2107.
> Thank you, from Ally Financial Incorporated.

15.     As further indicia that an ATDS was utilized by Ally, any calls which were not placed using a pre-recorded voice message were predictively dialed and connected to an outsourced call center operation upon answer or connection to voicemail.

3

16. On one such occasion, the call center agent that picked up the line upon connection to Plaintiff's voicemail did not know which company the auto dialed call concerned and had to search her computer to find the name Ally Financial.

17. Ally did not have Plaintiff's consent to place calls to Plaintiff's cellular telephone number using an ATDS or an artificial or pre-recorded voice message.

18. Plaintiff is not the person who Ally is attempting to reach, is not party to any debt, contract, or obligation with Ally, and has never provided his cellular telephone number to Ally for any purpose.

## THE TCPA

19. In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing practices - for example, computerized calls to private homes. Congress determined that federal legislation was needed because telemarketers, by operating interstate, were escaping state-law prohibitions on intrusive nuisance calls. *See Mims v. Arrow Financial Services, LLC,* 132 S. Ct. 740 (2012).

20. Accordingly, the TCPA regulates, *inter alia*, the use of prerecorded messages and use of automated telephone equipment, or "autodialers." Specifically, the plain language of section 227(b)(1)(A)(iii) prohibits the use of prerecorded messages or autodialers to make any call to a wireless number in the absence of an emergency or the prior express consent of the called party.

21. According to findings by the Federal Communication Commission

("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.

22. In 2003, the FCC held that predictive dialers like the one used by defendant constitute an ATDS under the TCPA. *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Report and Order, 18 F.C.C.R. 14014, 14115, ¶ 131 (July 3, 2003).

23. The FCC also held "[c]onsumers may revoke consent in any manner that clearly expresses a desire not to receive further messages, and that callers may not infringe on that ability by designating an exclusive means to revoke." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Declaratory Ruling and Order, FCC 15-72, 2015 FCC LEXIS 1586, ¶ 63, 30 FCC Rcd 7961, 2015 FCC LEXIS 1586, 62 Comm. Reg. (P & F) 1539 (F.C.C. July 10, 2015) ("FCC 2015 Order").

24. Verbal instructions to cease collection calls apply to the TCPA and thus effectively revoke any prior consent the caller may have had. *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242 (11th Cir. 2014), also see *FCC 2015 Order* section titled "Revoking Consent."

## COUNT I: VIOLATION OF THE TCPA

25. Plaintiff restates each of the factual allegations in all other paragraphs as if full stated herein.

26. This claim is for violation of the TCPA by Ally.

27. The telephone calls from Ally to Plaintiff's cellular telephone number were made using an ATDS.

28. The subject calls were made using a predictive dialer.

29. Many of the subject calls were made using an artificial or pre-recorded voice message.

30. Ally made calls to Plaintiff at a telephone number assigned to a cellular telephone service.

31. The telephone calls Ally made to Plaintiff were not made for emergency purposes, as defined by TCPA § 227 (b)(1)(A)(i).

32. Ally made unsolicited telephone calls to the wireless telephone number of plaintiff and the other members of the class using a pre-recorded voices and or using equipment that had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator.

33. At the time Ally made the phone calls alleged herein, Ally did not have express consent to do so.

34. Ally has therefore violated the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), which makes it unlawful for any person within the United States "... to make any call (other than a call made for emergency purposes or made with the prior express

consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice ... ".

35. As a result of Ally's illegal conduct, the members of the class suffered actual damages and, under § 227(b)(3)(B), and are each entitled to, *inter alia*, a minimum of $500.00 in damages for each such violation of the TCPA.

36. Plaintiff and class members are also entitled to, and do, seek injunctive relief prohibiting Ally's violations of the TCPA in the future.

## CLASS ALLEGATIONS

37. Plaintiff restates each of the allegations in all other paragraphs as if full stated herein.

38. Plaintiff, individually and on behalf of all others similarly situated, bring the above claims on behalf of a Class.

39. The Class consists of:

> (1) All persons in the United States (2) to whose cellular telephone number (3) Ally made a non-emergency telephone call (4) using the same dialing system(s) used to call Plaintiff or an artificial or prerecorded voice (5) within 4 years of the complaint (6) where Ally did not have express consent to call said cellular telephone number.

And two sub classes:

> *Sub-Class A*
> (1) All persons in the United States (2) to whose cellular telephone number (3) Ally made a non-emergency telephone call (4) using the same dialing system(s) used to call Plaintiff or an artificial or prerecorded voice (5) within 4 years of the complaint (6) who was not the person alleged to owe the debt in question.

> *Sub-Class B*
> (1) All persons in the United States (2) to whose cellular telephone number (3) Ally made a non-emergency telephone call (4) using the same dialing system(s) used to call Plaintiff or an artificial or prerecorded voice (5) within 4 years of the complaint (6) after that person had instructed Ally to cease calls to that number.

40. Ally has caused consumers actual harm, not only because consumers were subjected to the aggravation that necessarily accompanies these calls, but also because consumers frequently have to pay their cell phone service providers for the receipt of such calls; such calls are also an intrusion upon seclusion, diminish cellular battery life, and waste time.

41. Plaintiff represents and is a member of the Class and each subclass. Excluded from the Class are Defendant and any entities in which Ally has a controlling interest, Ally's agents and employees, the Judge to whom this action is assigned, and any member of the Judge's staff and immediate family, and claims for personal injury, wrongful death and/or emotional distress.

42. Plaintiff does not know the exact number of members in the Class, but based upon the size, national scope of Ally's business, and the use of automated software to make the debt collection calls, Plaintiff reasonably believes that the class members' number at a minimum in the thousands.

43. Plaintiff and all members of the Class have been harmed by Ally's actions.

44. This Class Action Complaint seeks money damages and injunctive relief.

45. The joinder of all class members is impracticable due to the size and relatively modest value of each individual claim. The disposition of the claims in a class action will provide substantial benefit to both the parties and the Court in avoiding multiplicity of identical suits. The class can be easily identified through records maintained by Ally.

46. There are questions of law and fact common to the members of the Class, which common questions predominate over any questions that affect only individual class members. Those common questions of law and fact include, but are not limited to:

   a. Whether Ally engaged in a pattern of using an ATDS tomake calls to cellular telephones;

   b. Whether Ally's dialer delivers pre-recorded messages to cellular telephones;

   c. Whether Ally's conduct was knowing and/or willful;

   d. Whether Ally's actions violated the TCPA; and

47. As a person who received the telephone calls using an ATDS or an artificial or prerecorded voice, without their prior express consent, all within the meaning of the TCPA, Plaintiff asserts claims that are typical of the members of the Class. Plaintiff will fairly and adequately represent and protect the interests of the Class, and Plaintiff does not have an interest that is antagonistic to any member of

the Class.

48. Plaintiff has retained counsel experienced in handling class action claims involving violations of federal and state consumer protection statutes such as the TCPA.

49. A class action is the superior method for the fair and efficient adjudication of this controversy. Class-wide relief is essential to compel Ally to comply with the TCPA. The interest of class members in individually controlling the prosecution of separate claims against Ally is small because the statutory damages in an individual action for violation of the TCPA is small. Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the calls at issue are all automated and the class members, by definition, did not provide the prior express consent required under the statute to authorize calls to their cellular telephones.

50. Ally has acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the class as a whole appropriate. Moreover, Plaintiff alleges that the TCPA violations complained of herein are substantially likely to continue in the future if an injunction is not entered.

**WHEREFORE**, Plaintiff requests that the Court enter judgment in his favor and favor of the Class, and against Ally for:

1. A declaration that Ally's practices described herein violate the Telephone Consumer Protection Act, 47 U.S.C. § 227;

2. A declaration that Ally used an ATDS to call the Plaintiff;

3. An injunction requiring Defendant not to call any reassigned numbers or numbers that were skip-traced to ensure that Plaintiff is not called if Plaintiff obtains additional telephone numbers in the future;

4. An injunction requiring Defendant to file quarterly reports of third party audits with the Court on its system and procedures not to call any reassigned numbers or numbers that were skip-traced to ensure that Plaintiff is not called in the future;

5. An injunction requiring Defendant not to call any numbers after a request to cease communications to ensure that Plaintiff is not called in the future;

6. An injunction requiring Defendant to file quarterly reports of third party audits with the Court on its system and procedures not to call any numbers after a request to cease communications to ensure that Plaintiff is not called in the future;

7. An injunction requiring Defendant not to call any reassigned numbers or numbers that were skip-traced to ensure that class members are not called if they obtain additional telephone numbers in the future;

8. An injunction requiring Defendant to file quarterly reports of third party audits with the Court on its system and procedures not to call

any reassigned numbers or numbers that were skip-traced to ensure that class members are not called in the future;

9. An injunction requiring Defendant not to call any numbers after a request to cease communications to ensure that the class members are not called in the future;

10. An injunction requiring Defendant to file quarterly reports of third party audits with the Court on its system and procedures not to call any numbers after a request to cease communications to ensure that the class members are not called in the future;

11. An award of actual damages;

12. An award of statutory damages for Plaintiff and each Class member in the amount of $500.00 for each and every call that violated the TCPA;

13. An award of treble damages, as provided by statute, of up to $1,500.00 for Plaintiff and each Class member for each and every call that violated the TCPA;

14. An order certifying this action to be a proper class action pursuant to the Federal Rules of Civil Procedure 23, establishing the appropriate Classes and any Sub-classes the Court deems appropriate, finding that Plaintiff is a proper representative of the Classes, and appointing the lawyers and law firms representing Plaintiff as counsel for the Classes;

15. Attorney's fees, litigation expenses and costs of suit; and

16. Such further and other relief the Court deems reasonable and just.

## JURY DEMAND

Plaintiff, individually and on behalf of all others similarly situated, demands trial by jury.

Dated: April 21, 2016

> Donell Tillman, individually and on behalf of all others similarly situated,
>
> By: /s/ *William Peerce Howard*
> William Peerce Howard (FBN0103330)
> Amanda J. Allen (FBN 098288)
> The Consumer Protection Firm
> TheConsumerProtectionFirm.com
> 210 A-South MacDill Ave.
> Tampa, Florida 33609
> (813) 500-1500
> Billy@TheConsumerProtectionFirm.com
> Amanda@TheConsumerProtectionFirm.com
>
> One of Plaintiffs' Attorneys