# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

Donell L. Tillman, individually and on behalf of
all others similarly situated,

       Plaintiff,

  vs.

Ally Financial Inc.,

       Defendant.

_____/

CASE NO. 2:16-cv-00313-UA-CM


**DISPOSITIVE MOTION**

## DEFENDANT ALLY FINANCIAL INC.'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND STRIKE CLASS ALLEGATIONS

## <u>TABLE OF CONTENTS</u>

**Page**

I.     INTRODUCTION ................................................................................ 1

II.    ALLEGED FACTS ............................................................................. 3

III.   THE CASE MUST BE DISMISSED FOR LACK OF ARTICLE III
      STANDING ......................................................................................... 4

      A.    *Spokeo* Has Completely Altered the Standing Landscape —
           Violation of a Statute Alone Does *Not* Create a Judiciable Harm ................. 5

      B.    Whatever Else *De Facto* Harm May Mean It is Clear that the Law
           Does not Involve Itself with Trifles ................................................. 6

      C.    Plaintiff Has Failed to Allege Facts Demonstrating that Each Call
           Caused Him *De Facto* Harm .......................................................... 9

           a.    Each Call for which Plaintiff Seeks to Recover Constitutes
                a Separate TCPA Claim and Plaintiff Must Have
                Article III Standing to Assert Each Claim ........................................ 9

           b.    Plaintiff's Allegations Do Not Establish He Suffered A
                Non-Trifling Injury with Respect to Each Call ................................ 10

IV.   THE PLEADED CLASS DEFINITIONS SHOULD BE STRICKEN AS
      THEY ARE FACIALLY UNCERTIFIABLE ...................................... 12

      A.    In the 11th Circuit, as Elsewhere, Classes Are Properly Stricken
           at the Pleading Stage Where There is No Possibility of
           Certification ................................................................................ 12

      B.    Plaintiff's Primary Class Definition is an Overbroad Fail-Safe
           Class ......................................................................................... 14

           a.    As the Court must Decide Merit-Based Issues to Ascertain
                Class Membership the Primary Class Definition is a
                Classic Fail Safe ....................................................................... 15

                1.    The Problems with Fail-Safe Classes ................................... 15

                2.    Fail Safe Class Definitions are Frequently Stricken
                     in TCPA Cases ...................................................................... 17

                  3.    Plaintiff's Primary Class Definition is a Fail Safe
                     and Should be Stricken ......................................................... 19

b.    The Primary Definition is Overbroad as it Includes Innumerable, Unascertainable, Members that Lack Article III Standing ............................................................................ 20

1.    A Class Definition Cannot Include Members that Lack Article III Standing ...................................................... 20

2.    It is Impossible to Identify Which Purported Class Members Did, or Did Not, Suffer Actionable *De Facto* Harm ........................................................................ 21

C.    Plaintiff's Sub-Class Definitions Are Also Facially Uncertifiable and must be Stricken ........................................................................ 22

V.    CONCLUSION ........................................................................ 25

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

*AJ Reyes v. Educ. Credit Mgmt. Corp.*,
  No. 315CV00628BASJMA, 2016 WL 2944294 (S.D. Cal. May 19, 2016) ..........................24

*American Pipe & Constr. Co. v. Utah*,
  414 U.S. 538, 94 S. Ct. 756, 38 L. Ed. 2d 713 (1974).............................................16

*Arcia v. Florida Sec'y of State*,
  772 F.3d 1335 (11th Cir. 2014) ...................................................................................8

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)....................................................................................................11

*Baxter v. Faulam*
  (1746) 1 Wils. K.B. 129, 95 Eng. Rep. 532 (K.B.)......................................................7

*Bearden v. Honeywell Int'l Inc.*,
  No. 3:09-1035, 2010 WL 3239285 (M.D. Tenn. Aug. 16, 2010)..........................13

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)..........................................................................................3, 12, 13

*Bennett v. Spear*,
  520 U.S. 154 (1997)......................................................................................................5

*Blair v. CBE Group, Inc.*,
  Case No. 13cv134–MMA (WVG), 2015 WL 5086375 (S.D. Cal. 2015) ...............19

*Bowen v. First Family Financial Servs., Inc.*,
  233 F.3d 1331 (11th Cir. 2000) ..................................................................................9

*Brandt v. Bd. of Educ. of City of Chicago*,
  480 F.3d 460 (7th Cir. 2007) ......................................................................................7

*Bright v. Smith*
  (1704) 2 Freeman 279, 22 Eng. Rep. 1210 (Ch.)......................................................7

*Buchholz v. Valarity, LLC*,
  No. 4:13CV0362 TIA, 2015 WL 590381 (E.D. Mo. Feb. 11, 2015)......................24

*Bussey v. Macon Cnty. Greyhound Park, Inc.*,
  562 F. App'x. 782 (11th Cir. 2014)...............................................17, 19, 21, 23

*C-Mart, Inc. v. Metro. Life Ins. Co.*,
  299 F.R.D. 679 (S.D. Fla. 2014)..................................................................................6

*CAMP Legal Defense Fund, Inc. v. City of Atlanta*,
    451 F. 3d 1257 (11th Cir. 2006) ....................................................................4, 5

*Chaparro v. Carnival Corp.*,
    693 F.3d 1333 (11th Cir. 2012) .......................................................................12

*Chicano Police Officer's Ass'n v. Stover*,
    526 F. 2d 431 (10th Cir. 1975) ..........................................................................8

*Comer v. Cisneros*,
    37 F.3d 775 (2d Cir. 1994)................................................................................9

*Common Cause/Georgia v. Billups*,
    554 F.3d 1340 (11th Cir. 2009) .........................................................................8

*Conigliaro v. Norwegian Cruise Line Ltd.*,
    No. 05-21584-CIV, 2006 WL 7346844 (S.D. Fla. Sept. 1, 2006)..............21, 23, 24

*Cox v. Cmty. Loans of Am., Inc.*,
    2014 WL 1216511 (M.D. Ga. Mar. 24, 2014) ......................................................16

*David v. Fed. Election Comm'n*,
    554 U.S. 724 (2008).....................................................................................2, 10

*De Los Santos v. Millward Brown, Inc.*,
    No. 13-80670-CV, 2014 WL 2938605 (S.D. Fla. June 30, 2014)...........................6

*DeLaughter v. Borden Company*,
    364 F. 2d 624 (5th Cir. 1966) .............................................................................9

*Denney v. Deutsche Bank AG*,
    443 F. 3d 253 (2d Cir. 2006).......................................................................15, 20

*Dykes v. Dudek*,
    No. 4:11CV116/RS-WCS, 2011 WL 4904407 (N.D. Fla. Oct. 14, 2011) ........15, 20

*Eager v. Credit Bureau Collection Servs., Inc.*,
    2014 WL 3534949 (W.D. Mich. Jul. 16, 2014)....................................................16

*Ewing Indus. Corp. v. Bob Wines Nursery, Inc.*,
    No. 3:13-CV-931-J-39JBT, 2014 WL 11370113 (M.D. Fla. June 26, 2014),
    *aff'd sub nom. Ewing Indus. Corp. v. Bob Wines Nursery, Inc.*, 795 F.3d 1324
    (11th Cir. 2015), *cert. denied*, 136 S. Ct. 1379 (2016) ...........................................13

*G.M. Sign, Inc. v. Franklin Bank, S.S.B.*,
    No. 06 C 949, 2007 WL 4365359 (N.D. Ill. Dec. 13, 2007) ...................................17

*Gager v. Dell Fin. Servs., LLC*,
    727 F.3d 265 (3d Cir. 2013)................................................................................1

*Garcia v. Kashi Co.*,
  43 F. Supp. 3d 1359, 1392 (S.D. Fla. 2014) .................................................................9, 24

*Gene and Gene LLC v. Biopay, LLC*,
  541 F.3d 318 (5th Cir. 2008) ...................................................................................19

*Granite State Outdoor Adver., Inc. v. City of Clearwater*,
  351 F.3d 1112 (11th Cir. 2003) ..................................................................................5

*Herrera v. JFK Med. Ctr. Ltd. P'ship*,
  No. 15-13253, 2016 WL 1637826 (11th Cir. Apr. 26, 2016) ..................................14

*Hill v. Wells Fargo Bank, N.A.*,
  946 F. Supp. 2d 817 (N.D. Ill. 2013) ......................................................................14

*Holtzman v. Turza*,
  No. 08 C 2014, 2010 WL 4177150 (N.D. Ill. Oct. 19, 2000) ...........................9, 24

*Hurt v. Shelby Cnty. Bd. of Educ.*,
  2014 WL 4269113 (N.D. Ala. Aug. 21, 2014) ........................................................16

*Jackson v. Motel 6 Multipurpose, Inc.*,
  130 F.3d 999 (11th Cir. 1997) ...........................................................................13, 14

*Jamison v. First Credit Servs., Inc.*,
  290 F.R.D. 92 (N.D. Ill. 2013)................................................................................20

*Jewell v. Parr*
  (1853) 13 C.B. 909 Eng. Rep. 1460 (C.P.) ..............................................................7

*Jones v. Bock*,
  549 U.S. 199 (2007).................................................................................................10

*Kamar v. RadioShack Corp.*,
  375 F. App'x 734 (9th Cir. 2010) ...............................................................15, 16, 20

*Karhu v. Vital Pharm., Inc.*,
  621 F. App'x 945 (11th Cir. 2015).............................................................................15

*Knight v. Columbus, Ga.*,
  19 F. 3d 579 (11th Cir. 1994) ............................................................................9, 24

*Kohen v. Pac. Inv. Mgmt. Co., LLC*,
  571 F.3d 672 (7th Cir. 2009) ..................................................................................20

*Lindsay Transmission, LLC v. Office Depot, Inc.*,
  No. 4:12–CV–221 CEJ, 2013 WL 275568 (E.D. Mo. Jan. 24, 2013) ..............17, 18

*Love v. Wal-Mart Stores, Inc.*,
  No. 12-61959-CIV, 2013 WL 5434565 (S.D. Fla. Sept. 23, 2013).........................13

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992).................................................................................4, 5

*Mais v. Gulf Coast Collection Bureau*,
    768 F.3d 1110 (11th Cir. 2014) ...............................................................19

*Manno v. Healthcare Revenue Recovery Grp., LLC*,
    289 F.R.D. 674 (S.D. Fla. 2013) ................................................................5

*Mazza v. Am. Honda Motor*,
    666 F.3d 581 (9th Cir. 2012) ...................................................................20

*Mazzei v. Money Store*,
    288 F.R.D. 45 (S.D.N.Y. 2012) ...............................................................16

*Messner v. Northshore Univ. HealthSystem*,
    669 F.3d 802 (7th Cir. 2012) ...............................................................15, 20

*Miccosukee Tribe of Indians of Fla. v. Fla. State Athletic Comm'n*,
    226 F.3d 1226 (11th Cir. 2000) .............................................................5, 11

*Mills v. Foremost Ins. Co*.,
    511 F.3d 1300 (11th Cir. 2008) ...............................................................14

*Mims v. Arrow Fin. Servs., LLC*,
    132 S. Ct. 740, 181 L. Ed. 2d 881 (2012) ...............................................12

*MJ Entertainment Enterprises, Inc. v. City of Mount Vernon*,
    234 F. Supp. 2d 306 (S.D.N.Y. Nov. 21, 2002)........................................9

*Moore v. Apple Inc.*,
    309 F.R.D. 532 (N.D. Cal. 2015).........................................................20, 21

*Morrison v. Allstate Indem. Co*.,
    228 F.3d 1255 (11th Cir. 2000) .............................................................9, 11

*Mullins v. Direct Digital, LLC*,
    795 F.3d 654 (7th Cir. 2015), *cert. denied*, 136 S. Ct. 1161, 194 L. Ed. 2d 175
    (2016)......................................................................................................19

*Onley v. Job.com, Inc.*,
    No. 1:12-CV-01724-LJO, 2013 WL 5476813 (E.D. Cal. Sept. 30, 2013) ........17, 18

*Panacci v. A1 Solar Power, Inc.*,
    No. 15-CV-00532-JCS, 2015 WL 3750112 (N.D. Cal. June 15, 2015) ...................18

*Prado-Steiman v. Bush*,
    221 F.3d 1266 (11th Cir. 2000) .................................................................9

*Randleman v. Fid. Nat'l Title Ins. Co.*,
   646 F.3d 347 (6th Cir. 2011) .........................................................................16, 20

*Randleman v. Fidelity Nat'l Title Ins*.
   Co., 646 F.3d 347 (6th Cir. 2011) ................................................................16, 20

*Randolph v. J.M. Smucker Co.*,
   303 F.R.D. 679 (S.D. Fla. 2014) .........................................................................14

*Republic of Argentina v. Weltover, Inc.*,
   504 U.S. 607, 112 S. Ct. 2160, 119 L. Ed. 2d 394 (1992) ....................................8

*Rink v. Cheminova, Inc.*,
   203 F.R.D. 648 (M.D. Fla. 2001) ........................................................................25

*Rivera v. Wyeth-Ayerst Labs.*,
   283 F.3d 315 (5th Cir. 2002) ...............................................................................11

*Rossario's Fine Jewelry, Inc. v. Paddock Publications, Inc.*,
   443 F.Supp.2d 976 (N.D. Ill. 2006) .......................................................................7

*In the Matter of Rules and Regulations Implementing the Telephone Consumer
   Protection Act of 1991*,
   30 FCC Rcd. 7961 (2015) ....................................................................................19

*In re Runyan*,
   530 B.R. 801 (M.D. Fla. 2015) ...........................................................................24

*Sauter v. CVS Pharmacy, Inc.*,
   No. 2:13-CV-846, 2014 WL 1814076 (S.D. Ohio May 7, 2014) ...................13, 17

*In re Sci. Applications Int'l Corp. (SAIC) Backup Tape Data Theft Litig.*,
   45 F. Supp. 3d 14 (D.D.C. 2014) ........................................................................12

*Shamblin v.Obama for Am.*,
   No. 13-2428, 2015 WL 1909765 (M.D. Fla. Apr. 27, 2015)...........................24, 25

*Skaff v. Meridien North America Beverly Hills, LLC*,
   506 F. 3d 832 (9th Cir. 2007) ........................................................................2, 6, 8

*Smith v. Merial Ltd.*,
   No. CIV. 10-1050, 2012 WL 2020361 (D.N.J. June 5, 2012) ..............................13

*Smith v. Ohio State Univ.*,
   No. 2:15-CV-3030, 2016 WL 3182675 (S.D. Ohio June 8, 2016) ........................12

*Soulliere v. CFI Resorts Management, Inc.*,
   No. 8:13-cv-2860 (M.D. Fla. 2015) ......................................................................24

*Spokeo, Inc. v. Robins*,
   136 S. Ct. 1540 (2016) ................................................................................ *passim*

*Stavrinides v. Pac. Gas & Elec. Co.*,
   No. C 16-00433 WHA, 2016 WL 1598744 (N.D. Cal. Apr. 21, 2016) ..................................10

*Stonecrafters, Inc. v. Foxfire Printing & Packaging, Inc.*,
   633 F. Supp. 2d 610 (N.D. Ill. 2009) ........................................................................7

*Stoops v. Wells Fargo Bank, N.A.*,
   Case 3:15-cv-00083-KRG, Doc. No. 79 (W.D. Pa. June 24, 2016) ...........................................4

*Stubbs v.McDonald's Corp.*,
   224 F.R.D. 668 (D. Kan. 2004) ...............................................................................14

*Sturm v. Providian Nat'l Bank*,
   242 B.R. 599 (S.D.W. Va. 1999) ..............................................................................9

*Taylor v. Universal Auto Group I, Inc.*,
   No. 3:13–cv–05245–KLS, 2014 WL 6654270 (W.D. Wash. Nov. 24, 2014) ....................................18

*Telephone Science Corporation v. Asset Recovery Solutions, LLC*,
   No. 15 C 5182, 2016 WL 47916 (N.D. Ill. Jan. 5, 2016) ...................................................2, 10

*Thigpen v. Bibb County, Ga., Sheriff's Dept.*,
   223 F. 3d 1231 (11th Cir. 2000) ............................................................................9

*Tietsworth v. Sears*,
   720 F. Supp. 2d 1123 (N.D. Cal. 2010) .......................................................................13

*Toback v. GNC Holdings, Inc.*,
   No. 13-80526-CIV, 2013 WL 5206103 (S.D. Fla. Sept. 13, 2013) ..........................................9, 24

*United States v. Hernandez*,
   418 F.3d 1206 (11th Cir. 2005) ..............................................................................8

*Varnes v. Home Depot USA*,
   No. 3:12-CV-622-J-39JBT, 2015 WL 5190648 (M.D. Fla. Sept. 4, 2015) ....................................22

*Walewski v. ZeniMax Media, Inc.*,
   No. 6:11-CV-1178-ORL-28, 2012 WL 834125 (M.D. Fla. Jan. 30, 2012),
   *report and recommendation adopted*, No. 6:11-CV-1178-ORL-28, 2012 WL
   847236 (M.D. Fla. Mar. 13, 2012), aff'd, 502 F. App'x 857 (11th Cir. 2012) ...........................22

*Wats v. Dix*,
   (1649) 82 Eng. Rep. 647 (K.B.) ..............................................................................7

*Whitmore v. Arkansas*,
   495 U.S. 149 (1990) .........................................................................................5

*Wisconsin Dep't of Revenue v. William Wrigley, Jr., Co.*,
   505 U.S. 214, 112 S. Ct. 2447, 120 L. Ed. 2d 174 (1992) .......................................8

*Wolfkiel v. Intersections Ins. Servs. Inc.*,
   303 F.R.D. 287 (N.D. Ill. 2014) ...........................................................................25

*Wright v. Family Dollar, Inc.*,
   No. 10 C 4410, 2010 WL 4962838 (N.D. Ill. Nov. 30, 2010) ................................14

*Young v. W. Pub. Corp.*,
   724 F. Supp. 2d 1268 (S.D. Fla. 2010) ...................................................................5

*Zarichny v. Complete Payment Recovery Services, Inc.*,
   80 F. Supp. 3d 610 (E.D. Pa. Jan. 21, 2015) ..........................................................17

**Statutes**

47 U.S.C. § 227(b)(1)(C) .............................................................................................17

**Other Authorities**

13 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* §
   3531 (2d ed. Supp.2002) .........................................................................................9

1 *Alexander M. Burrill, A New Law Dictionary and Glossary* 334 (Lawbook
   Exchange, Ltd. 1998) (1st ed. 1850) ..................................................................7

2 Stewart Rapalje & Robert L. Lawrence, *A Dictionary of American and English
   Law* 751 (Lawbook Exchange, Ltd. 1997) (1888) ...................................................7

*Black's Law Dictionary* 464 (8th ed.2004) ...............................................................7

1 *McLaughlin on Class Actions* § 3:4 (10th ed. 2013) .............................................13

Rule 12(f) ...................................................................................................................13

Rule 23 .............................................................................................................18, 20, 22

Rule 23(a) ...................................................................................................................22

Rule 23(b)(3)'s .............................................................................................................13

Rule 23(d)(1)(D) ..........................................................................................................13

Ally Financial, Inc., brings the instant Motion to Dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure sections 12(b)(6) and 12(b)(1) and Motion to Strike Class Allegations pursuant to sections 12(b)(6), 12(f), and 23(d)(1)(D).

## I.   INTRODUCTION

The United States Supreme Court recently reemphasized the importance of Article III standing requirements, particularly the requirement of a *de facto* injury that is concrete.  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) ("*Spokeo*"), as revised (May 24, 2016).  It wrote: "Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.  Article III standing requires a concrete injury even in the context of a statutory violation."  *Id*. at 1549.

In cases brought under the Telephone Consumer Protection Act ("TCPA"), *Spokeo* works a profound change.  For years courts in this Circuit have assumed that the mere violation of the TCPA constitutes an actionable "harm" conferring Article III jurisdiction upon district courts.  But *Spokeo* makes it clear that this assumption is simply not true.  Something more is required — a *de facto* real life harm.  Any standing analysis that starts with the assumption that a statutory violation necessarily causes harm, therefore, is simply invalid.

Obviously not all calls that violate the TCPA are likely to cause any real life harm.  In fact only relatively few do.  The TCPA erects a procedural barrier to placing certain calls — requiring "express consent" before they may be made.  But just because a call is *uninvited* does not mean that the call is *unwanted*.[1]  Indeed, ordinary experience counsels that the vast majority of calls received by individuals are neither expected nor invited but are, nevertheless, welcomed

---

[1] *Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 271 (3d Cir. 2013) (TCPA is a "remedial statute that was passed to protect consumers from *unwanted* automated telephone calls") (italics added).

and enjoyed.  At the very least they are not "harmful" in any meaningful sense.  The idea that a call placed without "express consent" naturally causes harm, therefore, is a non-starter.

But even if some trifling injury could be shown from Ally Financial Inc.'s ("Ally") conduct in this case, it would be insufficient to create standing.  Instead, Plaintiff must show that each of the calls for which he seeks to recover caused him a *meaningful* injury — outside of the Constitutional setting, the law does not concern itself with trifles.  *Skaff v. Meridien North America Beverly Hills, LLC*, 506 F. 3d 832, 840 (9th Cir. 2007) (a trifling injury is not sufficient to support constitutional Article III standing).  The allegations of the Complaint, however, contain merely a threadbare recitation of harm with no supporting facts demonstrating the nature or magnitude of that "harm" suffered.  Indeed, there is nothing alleged from which an inference of harm properly arises in this context at all.

And even if meaningful harm were caused by *one* of the calls at issue, Plaintiff cannot recover for *all* calls he received absent an additional showing that *each* such call also caused meaningful harm.  *See Telephone Science Corporation v. Asset Recovery Solutions, LLC,* No. 15 C 5182, 2016 WL 47916, * 4 (N.D. Ill. Jan. 5, 2016) (TCPA Plaintiff cannot "bootstrap" standing to assert claims that did not cause harm), citing *David v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008) (explaining that "a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought").  Otherwise the corresponding award of statutory damages would lack a jurisdiction-creating de facto injury.

Moreover, even if Plaintiff's allegations were sufficient to sustain his individual claims — and they are not — the class allegations cannot survive.  Each class member must have standing or the class definition is invalid.  Identifying which class members did or did not suffer a meaningful harm as a result of the calls at issue, however, is impossible absent class-destroying individualized inquiries.  And the standing issue is merely the first of numerous fatal flaws

plaguing the class definitions.  Plaintiff's primary class definition is a fail-safe class — requiring a review of the merits to determine who fits within the class to begin with — and his two sub-classes are also facially non-certifiable.  These are not flaws that discovery can fix. They are emblazoned on the face of the Complaint, irreparable, and "should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

For these reasons, and others, the case should be dismissed and the class allegations stricken.

## II.      ALLEGED FACTS

Plaintiff alleges that beginning in around December 2015 he began receiving telephone calls on his cellular telephone from Ally.  Compl., ¶ 9.  The calls were intended for another individual, apparently an Ally customer, by the last name of "Everett."  *Ibid.*

Plaintiff alleges he notified Ally that "Everett" could not be reached at the number and requested that Ally cease further calls to him.  Compl., ¶ 10.

Plaintiff alleges that over the next three months Ally placed twenty-two (22) additional calls to him, although it is unclear whether those calls were connected, answered, or even seen or heard by the Plaintiff.  Compl., ¶ 11.  At least one of these attempted calls was not answered and resulted only in a voicemail.  Compl., ¶ 14.

The Complaint is silent regarding any monetary loss suffered as a result of the calls, and does not mention any damage caused by the calls to Plaintiff at all.  On the other hand, the Complaint does allege that class members suffered purportedly "actual harm" due to the "aggravation that necessarily accompanies these calls, but also because consumers frequently have to pay their cell phone service providers for the receipt of such calls; such calls are also an intrusion upon seclusion, diminish cellular battery life, and waste time."  Compl., ¶ 40.  The

Complaint does not specify which class members suffered which kind of damage. The Complaint also does not allege that Plaintiff suffered any of the enumerated forms of "actual harm," although it vaguely recites elsewhere that Plaintiff was "harmed" by Ally's phone calls in some unspecified way. Compl., ¶ 43.

As explained below, these facts are insufficient to create Article III standing on the calls at issue and the class allegations should be stricken as the proffered definitions are necessarily insufficient.

## III.   THE CASE MUST BE DISMISSED FOR LACK OF ARTICLE III STANDING

In *Spokeo,* the United States Supreme Court held definitively that Congress cannot "erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing." *Spokeo,* 136 S. Ct. at 1548. Most importantly, it was observed that a plaintiff does not "automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id*. at 1549. Instead, "Article III standing requires a concrete injury even in the context of a statutory violation." *Id*. And some statutory violations simply do not cause any real world harm. *Id*. at 1550 (noting the example of an errant zip code on a consumer credit report.) Accordingly, it is insufficient for plaintiff to merely allege that he received "illegal" calls — he must demonstrate that some concrete — *i.e.* "real"—harm was suffered as a result. *See Id*; *see, e.g.*, *Stoops v. Wells Fargo Bank, N.A.,* Case 3:15-cv-00083-KRG, Doc. No. 79, at pp. 27-31(W.D. Pa. June 24, 2016) (finding that a plaintiff that received ATDS calls "without consent" lacked Article III standing to assert her TCPA claim due to a lack of any actual harm).

"[T]he irreducible constitutional minimum of standing contains three elements." *CAMP Legal Defense Fund, Inc. v. City of Atlanta*, 451 F. 3d 1257, 1269 (11th Cir. 2006), quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). A plaintiff who invokes the

jurisdiction of a federal court bears the burden to show "(1) an injury in fact, meaning an injury that is concrete and particularized, and actual or imminent, (2) a causal connection between the injury and the causal conduct, and (3) a likelihood that the injury will be redressed by a favorable decision." *Granite State Outdoor Adver., Inc. v. City of Clearwater,* 351 F.3d 1112, 1116 (11th Cir. 2003). The plaintiff bears the burden of establishing each of these elements. *See Bennett v. Spear*, 520 U.S. 154, 167-68 (1997). And each element of standing is "an indispensable part of the plaintiff's case" and "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *CAMP Legal Defense Fund, Inc.,* 451 F. 3d at 1269, quoting *Lujan*, 504 U.S. at 561. Importantly, to be "concrete" after *Spokeo*, the injury in fact — as the name implies —must be an actual real life harm that exists "in fact." *Spokeo*, at 1550. The harm must be "real," and not "abstract." *Id.* at 1548.

Plaintiff has failed to allege facts demonstrating an "injury in fact." He has alleged only the narrow elements of the statute, without any showing of resulting harm. This is *per se* insufficient and the case must be dismissed. *Miccosukee Tribe of Indians of Fla. v. Fla. State Athletic Comm'n*, 226 F.3d 1226, 1229 (11th Cir. 2000) (a court "should not speculate concerning the existence of standing, nor should we imagine or piece together an injury sufficient to give plaintiff standing when it has demonstrated none..."); *Whitmore v. Arkansas*, 495 U.S. 149, 155-56 (1990) (to plead standing, a plaintiff must "clearly and specifically set forth facts sufficient to satisfy [the] Article III standing requirements").

A.    *Spokeo* **Has Completely Altered the Standing Landscape — Violation of a Statute Alone Does** *Not* **Create a Judiciable Harm**

Prior to *Spokeo*, numerous district courts within this Circuit had assumed that the mere violation of a statute sufficed to create a "concrete" injury. *See, e.g., Young v. W. Pub. Corp.*, 724 F. Supp. 2d 1268, 1281 (S.D. Fla. 2010) (an actual or threatened injury sufficient to meet

Article III case-or-controversy "may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing"); *Manno v. Healthcare Revenue Recovery Grp., LLC*, 289 F.R.D. 674, 682 (S.D. Fla. 2013) ("Manno has alleged Defendants' conduct violated both [the FDCPA and TCPA], and that is enough to confer upon him standing under Article III."); *C-Mart, Inc. v. Metro. Life Ins. Co*., 299 F.R.D. 679, 687 (S.D. Fla. 2014) ("C-Mart has met its burden in showing that Defendants' conduct violated TCPA, which is sufficient to confer standing upon it."); *De Los Santos v. Millward Brown, Inc.*, No. 13-80670-CV, 2014 WL 2938605, at *2 (S.D. Fla. June 30, 2014) ("By receiving a call, her statutory right was violated: a statute "creat[es] legal rights, the invasion of which creates standing.").

These cases were incorrectly decided.  As *Spokeo* makes clear, the mere violation of a statute does not constitute an injury in fact.  Instead, a "real" harm must have been suffered by the violation at issue to confer standing.  *Spokeo*, at 1550.  Indeed each of these cases mirrors the flaw apparent in the Ninth Circuit's reasoning in the doomed *Spokeo* decision — they considered only whether the injury belongs to the Plaintiff (*i.e*., whether an injury was particularized) without considering whether a "real" injury was suffered at all (*i.e*., whether an injury was "concrete.") As the Supreme Court just made crystal clear, however, that mistake constitutes reversible error.  *Spokeo*, at 1550 ("Because the Ninth Circuit failed to fully appreciate the distinction between concreteness and particularization, its standing analysis was incomplete.").

Given the pervasiveness of this error, however, no "concrete harm" formulation appears to yet exist in the Eleventh Circuit. As such, this Court is writing on a blank slate in assessing the degree of harm necessary to constitute a "concrete" injury for purposes of Article III and *Spokeo.*

## B.      Whatever Else *De Facto* Harm May Mean It is Clear that the Law Does not Involve Itself with Trifles

While courts within the Eleventh Circuit have commonly assumed that the mere violation of a statute constitutes an "injury in fact," other courts have developed different formulations for

assessing the "concreteness" of an injury.  Perhaps the best known is the idea that the law does not concern itself with trifles.  *Skaff v. Meridien North America Beverly Hills, LLC*, 506 F. 3d 832, 840 (9th Cir. 2007) (violations of a statute that cause only a "trifling" injury are "insufficient to support constitutional standing").   This standard has ancient roots.  *See* 1 *Alexander M. Burrill, A New Law Dictionary and Glossary* 334 (Lawbook Exchange, Ltd. 1998) (1st ed. 1850) (reciting the maxim of *de minimis non curat lex*, translated as "[t]he law does not care for, or take notice of trifling matters"); 2 Stewart Rapalje & Robert L. Lawrence, *A Dictionary of American and English Law* 751 (Lawbook Exchange, Ltd. 1997) (1888) (reciting the maxim of *lex non curat de minimis*, translated as "[t]he law cares not about trifles"); *Jewell v. Parr*, (1853) 13 C.B. 909, 916, 138 Eng. Rep. 1460, 1463 (C.P.) ("Applying the maxim *de minimis non curat lex*, when we say that there is no evidence to go to a jury, we do not mean that there is literally none, but that there is none which ought reasonably to satisfy a jury that the fact sought to be proved is established."); *Baxter v. Faulam*, (1746) 1 Wils. K.B. 129, 129, 95 Eng. Rep. 532, 532 (K.B.) (holding that an apprentice was not required to pay taxes on his salary of six pence, noting that "this case falls under the saying of *de minimis non curat lex*"); *Bright v. Smith*, (1704) 2 Freeman 279, 280, 22 Eng. Rep. 1210, 1210 (Ch.); *Wats v. Dix*, (1649) 82 Eng. Rep. 647, 647 (K.B.) (discussing counsel's argument that a lease made at the direction of a deed in trust was valid because the lease varied only slightly from the direction in the deed, and "d*e minimis non curat lex*"); see also *Black's Law Dictionary* 464 (8th ed.2004) (reciting the maxim of d*e minimis non curat lex*, translated as "[t]he law does not concern itself with trifles"). It also enjoys repeated pronouncement and usage amongst modern courts.  *See, e.g., Stonecrafters, Inc. v. Foxfire Printing & Packaging, Inc.*, 633 F. Supp. 2d 610, 613 (N.D. Ill. 2009) (unsolicited fax caused only trifling injury, insufficient to confer standing);  *Brandt v. Bd. of Educ. of City of Chicago*, 480 F.3d 460, 465 (7th Cir. 2007) (doctrine that the law doesn't concern itself with

trifles" is a "venerable maxim" that "is part of the established background of legal principles against which all enactments are adopted"); *Rossario's Fine Jewelry, Inc. v. Paddock Publications, Inc*., 443 F.Supp.2d 976 (N.D. Ill. 2006) ("the ancient maxim '*de minimis non curat lex*' might well have been coined" for the occasion in which a conversion claim is brought based solely on the loss of paper and toner consumed during the generation of a one-page unsolicited fax advertisement).

The Eleventh Circuit too has recognized the application of the maxim, although not in the context of assessing Constitutional standing.  *See United States v. Hernandez*, 418 F.3d 1206, 1212, n. 7 (11th Cir. 2005) ("[o]f trifles the law does not concern itself: *De minimis non curat lex*. This ancient legal maxim seems especially pertinent when it is the Constitution that we are being asked to apply.").[2]  Additionally, this principle frequently has been followed by the Supreme Court.  *See, e.g., Wisconsin Dep't of Revenue v. William Wrigley, Jr., Co.,* 505 U.S. 214, 231, 112 S. Ct. 2447, 2457, 120 L. Ed. 2d 174 (1992) (stating that "the venerable maxim *de minimis non curat lex* (`the law cares not for trifles') is part of the established background of legal principles against which all enactments are adopted, and which all enactments (absent contrary indication) are deemed to accept," collecting cases); *see also Republic of Argentina v. Weltover, Inc*., 504 U.S. 607, 618, 112 S. Ct. 2160, 2168, 119 L. Ed. 2d 394 (1992) ("[T]he generally applicable principle *de minimis non curat lex* ensures that jurisdiction may not be predicated on purely trivial effects in the United States.").

---

[2] On the other hand, the Eleventh Circuit has found that even a small injury, "an identifiable trifle," is sufficient to confer standing in the context of an equal protection challenge in voting rights cases.  *See Common Cause/Georgia v. Billups*, 554 F.3d 1340, 1351 (11th Cir. 2009); *Arcia v. Florida Sec'y of State*, 772 F.3d 1335, 1340 (11th Cir. 2014).  This more lenient standard appears to only apply in Constitutional rights cases, however.  *E.g.*, *Chicano Police Officer's Ass'n v. Stover*, 526 F. 2d 431, 436 (10th Cir. 1975) (noting that ordinary the standing requirements are not to be applied to defeat constitutional claims, which require only an "identifiable trifle" to be judiciable).

In formulating a "concrete" harm standard, therefore, this Court should consider trifling or *de minimus* injuries insufficient to confer standing.  *Skaff*, 506 F. 3d at 840.

## C.   Plaintiff Has Failed to Allege Facts Demonstrating that Each Call Caused Him *De Facto* Harm

### a.   Each Call for which Plaintiff Seeks to Recover Constitutes a Separate TCPA Claim and Plaintiff Must Have Article III Standing to Assert Each Claim

It is Plaintiff's burden to demonstrate he possesses standing to assert his claims, not Ally's burden to demonstrate that he lacks it.  *Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1273 (11th Cir. 2000).  Importantly, "a plaintiff must establish standing for each separate claim asserted."  *MJ Entertainment Enterprises, Inc. v. City of Mount Vernon*, 234 F. Supp. 2d 306, 311 (S.D.N.Y. Nov. 21, 2002), citing *Bowen v. First Family Financial Servs., Inc.*, 233 F.3d 1331, 1339 (11th Cir. 2000); *Comer v. Cisneros*, 37 F.3d 775, 788 (2d Cir. 1994); 13 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3531 (2d ed. Supp.2002) ("A party with standing to advance one claim may lack standing to advance other claims.").  That is, "Article III standing of a named plaintiff must be established on a claim-by-claim basis within the Eleventh Circuit…" *Garcia v. Kashi Co.*, 43 F. Supp. 3d 1359, 1392 (S.D. Fla. 2014); *Toback v. GNC Holdings, Inc.*, No. 13-80526-CIV, 2013 WL 5206103, at *4 (S.D. Fla. Sept. 13, 2013) (same), *citing Prado-Steiman v. Bush*, 221 F.3d 1266, 1279-80 (11th Cir. 2000).

Each separate violation of a statute gives rise to a claim, which is independently actionable.  *See, e.g., Knight v. Columbus, Ga.*, 19 F. 3d 579, 582 (11th Cir. 1994) (each violation of a statute gives rise to a new cause of action); *Thigpen v. Bibb County, Ga., Sheriff's Dept.*, 223 F. 3d 1231, 1244 (11th Cir. 2000) (same); *DeLaughter v. Borden Company*, 364 F. 2d 624, 628  (5th Cir. 1966) (reversing district court and holding "that each act committed…in violation of [a statute] is a separate and distinct offense which gives rise to a separate cause of action" ); *Holtzman v. Turza*, No. 08 C 2014, 2010 WL 4177150, *5 (N.D. Ill. Oct. 19, 2000)("

each instance of a violation [of the TCPA] is independently actionable"); *see also Sturm v. Providian Nat'l Bank*, 242 B.R. 599, 603 (S.D.W. Va. 1999) (noting that each violation of a similar consumer protection statute "creates a single cause of action to recover a single penalty"). As such, Plaintiff must independently plead and prove harm for each call he seeks to recover for. *See Telephone Science Corporation,* No. 15 C 5182, 2016 WL 47916, * 4 (TCPA Plaintiff cannot "bootstrap" standing to assert claims that did not cause harm), citing *David*, 554 U.S. at 734 (explaining that "a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought").

Here, therefore, Plaintiff does not just seek one recovery for a single claim under the TCPA — *i.e*., one recovery or either $500.00 or $1,500.00 — but instead, seeks recovery on numerous purported separate violations of the statute, each one constituting a separate claim and carrying a separate price tag.  As such, he must establish standing to assert each such violation.[3]

b.      **Plaintiff's Allegations Do Not Establish He Suffered A Non-Trifling Injury with Respect to Each Call**

At the outset, it is important that Plaintiff has not alleged that he was charged for any of the calls he received in this case.  Some courts have held that fact alone to be dispositive of a TCPA case involving calls to cell phones.  *See* S*tavrinides v. Pac. Gas & Elec. Co*., No. C 16-00433 WHA, 2016 WL 1598744, at *2 (N.D. Cal. Apr. 21, 2016) (motion to dismiss granted, in part, because "plaintiff has not alleged that he was charged for the call, which he must allege to state a claim under the TCPA").

From a standing perspective, however, the loss of an economic hook severely undercuts Plaintiff's ability to show that he suffered a "real world" harm from the calls he received.  This is so because, much like the Fair Credit Reporting Act at issue in *Spokeo*, the TCPA regulates

---

[3] Admittedly, where a Plaintiff lacks standing to assert certain claims, "[o]nly the bad claims are dismissed; the complaint as a whole is not."  *Jones v. Bock,* 549 U.S. 199, 221 (2007).

conduct — the making of a phone call — which is not, in and of itself, likely to cause harm in the real world.  People receive literally billions of calls a day with no harm resulting.   While the TCPA creates a procedural rule legislating that a specific subset of these billions of otherwise harmless occurrences — those calls made without express consent — give rise to a cognizable legal claim,  only those calls that actually caused harm are actionable in an Article III courtroom, no matter the language of the TCPA.   *Spokeo,* at 1550; *See Rivera v. Wyeth-Ayerst Labs*., 283 F.3d 315, 319 (5th Cir. 2002) ("Merely asking for money does not establish an injury in fact.").

And here's the real key to applying *Spokeo* in the TCPA setting — just because a call was not expressly invited before it was made does not mean that it caused a real world harm.  An *uninvited* call is not always an *unwanted* call.  And even those calls that are unwanted must individually *impact* the recipient in a concrete and negative way to create an "injury in fact."  Yes, the impact need only be small, but it still must be concrete.  In a word, it must be *real*, and not merely *assumed* or *hypothetical*.  *Miccosukee Tribe of Indians of Fla*, 226 F.3d at 1229 (it is not enough that "the [plaintiff]'s complaint sets forth facts from which [a court] could imagine an injury sufficient to satisfy Article III's standing requirements."); *Morrison v. Allstate Indem. Co*., 228 F.3d at 1273 ("[j]urisdiction cannot be established by a hypothetical.").

Plaintiff's Complaint is thin on the issue of harm and offers nothing more than assumptions and threadbare recitals, which are classically insufficient to survive a pleading challenge.  *See* Compl., ¶¶ 40, 43; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  And the facts supporting the allegation of "actual harm" are simply missing.  At best, Plaintiff's phone rang approximately 20 times without consent. Compl., ¶ 11.  But so what?  No allegations exist as to the receipt of those calls or how each may have disrupted or intruded upon the Plaintiff's privacy, if at all.  While it is true that uninvited calls sometimes "interrupt our

dinner at night" or "force the sick and elderly out of bed" they do not always do so.[4] Importantly, "[f]actual allegations that are merely consistent with a defendant's liability fall short of being facially plausible." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012). As such, allegations setting the groundwork for theoretical harm are not the same as demonstrating that a concrete harm that was actually suffered. *Smith v. Ohio State Univ.*, No. 2:15-CV-3030, 2016 WL 3182675, at *4 (S.D. Ohio June 8, 2016) (invasion of privacy causing no "concrete consequential damage" not actionable under Article III); *In re Sci. Applications Int'l Corp. (SAIC) Backup Tape Data Theft Litig.*, 45 F. Supp. 3d 14, 25 (D.D.C. 2014) (theft of data, without more, did not cause injury in fact because no harm followed).

Hence, although every call made without "express consent" might constitute a sterile statutory violation, not every such call gives rise to Article III standing for purposes of the award of statutory damages.  Instead, Plaintiff must plead his way to each such award with a demonstration that each separately actionable call caused him some appreciable measure of real world injury.  He simply has not done so here.  As such the case must be dismissed.

## IV.   THE PLEADED CLASS DEFINITIONS SHOULD BE STRICKEN AS THEY ARE FACIALLY UNCERTIFIABLE

### A.   In the 11th Circuit, as Elsewhere, Classes Are Properly Stricken at the Pleading Stage Where There is No Possibility of Certification

The United States Supreme Court has observed that the cost of discovery in class actions can be enormous and that, as a result, courts should scrutinize the plausability of allegations at the pleading stage.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007) (noting that courts have the power to "insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed").  Deficiencies that might prevent a portion of the case from

---

[4] *See Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 752, 181 L. Ed. 2d 881 (2012) (quoting statements made on the Senate floor by Senator Hollings, the TCPA's sponsor).

going forward ought to "be exposed at the point of minimum expenditure of time and money by the parties and the court." *Id.*

Consistent with these principles, Rule 12(f)[5] and Rule 23(d)(1)(D)[6] authorize the Court "to strike class allegations prior to discovery if the complaint demonstrates that a class action cannot be maintained." *Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1146 (N.D. Cal. 2010); *Bearden v. Honeywell Int'l Inc.*, No. 3:09-1035, 2010 WL 3239285, at *4 (M.D. Tenn. Aug. 16, 2010) (same); *Smith v. Merial Ltd.*, No. CIV. 10-1050, 2012 WL 2020361, at *6 (D.N.J. June 5, 2012) (same); *Sauter v. CVS Pharmacy, Inc.*, No. 2:13-CV-846, 2014 WL 1814076, at *2 (S.D. Ohio May 7, 2014) (same).  And "[m]ost courts recognize that a motion to strike class action allegations may properly be filed before plaintiffs have filed a motion for class certification." *Sauter*, 2014 WL 1814076, at *2 (citing 1 *McLaughlin on Class Actions* § 3:4 (10th ed. 2013)).

Matters are no different in the Eleventh Circuit, where improper class definitions are routinely stricken.  *See, e.g., Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1006 (11th Cir. 1997) (concluding that Rule 23(b)(3)'s predominance requirement could not be satisfied, and that such failure was "readily apparent from a reading of the ... complaint"); *Ewing Indus. Corp. v. Bob Wines Nursery, Inc.*, No. 3:13-CV-931-J-39JBT, 2014 WL 11370113, at *3 (M.D. Fla. June 26, 2014), *aff'd sub nom. Ewing Indus. Corp. v. Bob Wines Nursery, Inc.*, 795 F.3d 1324 (11th Cir. 2015), *cert. denied,* 136 S. Ct. 1379 (2016) (granting motion to strike class allegations in TCPA case); *Love v. Wal-Mart Stores, Inc.*, No. 12-61959-CIV, 2013 WL 5434565, at *1 (S.D. Fla. Sept. 23, 2013) (granting defendant's motion to dismiss class allegations at the pleading stage).  That said, the Eleventh Circuit Court of Appeal has cautioned that classes

---

[5] Providing the Court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent or scandalous matter."  Fed. R. Civ. P. 12(f).

[6] Allowing that the Court may issue an order "require[ing] that the pleadings be amended to eliminate allegations about representation of absent persons."  Fed. R.  Civ. P. 23(d)(1)(D).

should not be stricken where discovery might reveal a certifiable class.  *Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1309 (11th Cir. 2008).[7]   Nonetheless, it remains the rule in the Eleventh Circuit, as elsewhere, that "[i]n some instances, the propriety *vel non* of class certification can be gleaned from the face of the pleadings." *Mills v. Foremost Ins. Co.*, 511 F.3d at 1309; *see also Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1006 (11th Cir. 1997) ("[The] failure of predominance is readily apparent from a reading of the *Jackson* plaintiffs' complaint.").

In those instances, "[t]he court need not wait for a motion for class certification" to strike a class.  *Stubbs v.McDonald's Corp.*, 224 F.R.D. 668, 674 (D. Kan. 2004); *see also Hill v. Wells Fargo Bank, N.A.*, 946 F. Supp. 2d 817, 829-30 (N.D. Ill. 2013); *see also Wright v. Family Dollar, Inc.*, No. 10 C 4410, 2010 WL 4962838, at *1 (N.D. Ill. Nov. 30, 2010) ("[C]ourts may – and should – address the plaintiff's class allegations when the pleadings are facially defective and definitively establish that a class action cannot be maintained.").

**B.     Plaintiff's Primary Class Definition is an Overbroad Fail-Safe Class**

A "plaintiff seeking to represent a proposed class must establish that the proposed class is `adequately defined and clearly ascertainable.'" *Randolph v. J.M. Smucker Co.*, 303 F.R.D. 679, 684 (S.D. Fla. 2014).  Plaintiff's primary class definition is neither.

By Plaintiff's primary class definition he seeks to represent everyone in the nation with a valid TCPA claim against Ally.  Specifically, Plaintiff seeks to represent everyone that received a pre-recorded call from Ally without express consent.  Compl., ¶ 39.  In essence, Plaintiff has rearranged the words of the statute to define his class.

---

[7] This issue most commonly arises where a party seeks to strike a class contending that common issues do not predominate.  *See, e.g. Herrera v. JFK Med. Ctr. Ltd. P'ship*, No. 15-13253, 2016 WL 1637826, at *3 (11th Cir. Apr. 26, 2016) (reversing district court's decision to strike class allegations at the pleading stage "because discovery is needed to determine whether common issues predominate over any individualized questions").

Plaintiff's primary class definition represents a classic example of an uncertifiable fail-safe class. It requires the Court to inquire at the outset "whether the person has a valid claim" just to determine "whether a person qualifies as a member." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 825 (7th Cir. 2012) ("Messner"). As shown below, fail-safe classes are necessarily uncertifiable and numerous courts have stricken fail-safe class definitions at the pleading stage in TCPA cases just like this one. This court should too.

Additionally, the class is overbroad because it includes individuals that do not have standing in that they have not suffered any actual harm. *See Spokeo*, at 1547, fn. 6 ("That a suit may be a class action ... adds nothing to the question of standing…"). Yet "[n]o class may be certified that contains members lacking Article III standing." *Dykes v. Dudek*, No. 4:11CV116/RS-WCS, 2011 WL 4904407, at *2 (N.D. Fla. Oct. 14, 2011), *citing Denney v. Deutsche Bank AG*, 443 F. 3d 253, 264 (2d Cir. 2006). This flaw cannot be addressed by amendment or discovery because sniffing out the presence of individual "concrete" harm among class members — as Plaintiff must — will never be an administratively feasible task. *Karhu v. Vital Pharm., Inc.*, 621 F. App'x 945, 946 (11th Cir. 2015) (citations omitted) ("Identifying class members is administratively feasible when it is a `manageable process that does not require much, if any, individual inquiry.'"). As such the class must be stricken.

a. **As the Court must Decide Merit-Based Issues to Ascertain Class Membership the Primary Class Definition is a Classic Fail Safe**

1. **The Problems with Fail-Safe Classes**

A fail-safe class is "one that is defined so that whether a person qualifies as a member depends on whether the person has a valid claim." *Messner*, 669 F.3d at 825. With a fail-safe class, the class membership is not defined unless and until the liability of the defendant is established. *Kamar v. RadioShack Corp.*, 375 F. App'x 734, 736 (9th Cir. 2010) ("*Kamar*"). Such an impermissibly "fail-safe" class "exists if the class `is defined in a way that precludes

membership unless the liability of the defendant is established.'" *Cox v. Cmty. Loans of Am., Inc*., 2014 WL 1216511, at *14 (M.D. Ga. Mar. 24, 2014) (quoting *Kamar v. RadioShack Corp*., 375 F. App'x 734, 736 (9th Cir. 2010) and citing *Randleman v. Fidelity Nat'l Title Ins*. Co., 646 F.3d 347, 352 (6th Cir. 2011) (explaining the flaw in an improper fail-safe class: "Either the class members win or, by virtue of losing, they are not in the class and, therefore, not bound by the judgment")); *see also Hurt v. Shelby Cnty. Bd. of Educ*., 2014 WL 4269113, at *8 (N.D. Ala. Aug. 21, 2014) ("A fail-safe class is `a class whose membership can only be ascertained by a determination of the merits of the case because the class is defined in terms of the ultimate question of liability.'").

As Judge Hopkins explained in *Hurt*:

> The problems with such classes are both logical and practical. On the logical front, the class definition is essentially circular. It defines its members on the presumption that such members have viable claims against the defendant. So, the class definition assumes what it ostensibly seeks to prove. This is itself problematic. *See, e.g., Mazzei v. Money Store*, 288 F.R.D. 45, 55 (S.D.N.Y. 2012) (holding that proposed class definition limited to those charged fees that "were not permitted" wrongly "defines the class . . . by the very liability the plaintiff seeks to establish").
>
> The problems compound, however, when one considers the practical complications such definitions introduce. First, they permit plaintiffs to circumvent res judicata and basically rig the certification process so that they cannot lose. That is, "[e]ither the class members win or, by virtue of losing, they are not in the class and, therefore, not bound by the judgment." *Randleman v. Fid. Nat'l Title Ins. Co*., 646 F.3d 347, 352 (6th Cir. 2011) (footnote and citations omitted) . . . Finally — and most obviously — a fail safe class "is unmanageable because the members of the class could only be known after a determination of liability." *Eager v. Credit Bureau Collection Servs., Inc*., 2014 WL 3534949, at *4 (W.D. Mich. Jul. 16, 2014) (quoting *Mazzei*, 288 F.R.D. at 55).

*Hurt v. Shelby Cnty. Bd. of Educ*, 2014 WL 4269113, at *8.

So there are two major problems with fail-safe classes.  First, they are fundamentally unfair and revive in another form impermissible one-way intervention.  *See American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 546-50, 94 S. Ct. 756, 38 L. Ed. 2d 713 (1974).

16

Transcending unfairness, however, fail-safe class definitions are also improper because they are not based upon identifiable objective criteria; but rather upon the merits of each class member's claims.  Yet a class must be identifiable and membership must be determinable through application of objective criteria to be certifiable.  *Bussey v. Macon Cnty. Greyhound Park, Inc.*, 562 F. App'x. 782, 787 (11th Cir. 2014) ("Bussey") (a class is not ascertainable unless the class definition contains objective criteria that allow for class members to be identified in an administratively feasible way).

### 2.      Fail Safe Class Definitions are Frequently Stricken in TCPA Cases

Given their many facial flaws, fail-safe class definitions in TCPA cases are always subject to being stricken at the pleading stage.  *See, e.g., Zarichny v. Complete Payment Recovery Services, Inc.*, 80 F. Supp. 3d 610, 625-26  (E.D. Pa. Jan. 21, 2015) (motion to strike TCPA class allegations granted at the pleadings stage where the putative TCPA class was comprised of those people who received telephone calls "without the recipient's 'prior express consent'"); *Sauter v. CVS Pharmacy, Inc.*, No. 2:13–CV–846, 2014 WL 1814076, at *8 (S.D. Ohio May 7, 2014) (class definitions in TCPA claim were fail-safe because they were restricted to "only those individuals who did not expressly consent to the receipt of the defendant's phone calls made with the use of n ATDS" and thus consisted "solely of persons who can establish that defendant violated the TCPA"); *Onley v. Job.com, Inc.*, No. 1:12-CV-01724-LJO, 2013 WL 5476813, at *10-11 (E.D. Cal. Sept. 30, 2013) ("Onley") (class defined as "anyone who received [a call from defendant to her cellular phone made through the use of an ATDS] without prior express consent" was fail-safe because the class would consist of "only those potential members who would prevail"); *Lindsay Transmission, LLC v. Office Depot, Inc.*, No. 4:12–CV–221 CEJ, 2013 WL 275568, at *4 (E.D. Mo. Jan. 24, 2013) (striking class definition in a TCPA claim under 47 U.S.C. § 227(b)(1)(C) as fail-safe); *G.M. Sign, Inc. v. Franklin Bank, S.S.B.*, No. 06 C

949, 2007 WL 4365359, at *3 (N.D. Ill. Dec. 13, 2007) ("*Lindsay*") (striking a class definition in a TCPA claim where class included persons who were sent an "unlawful fax message" and for whom the defendant "cannot provide evidence of … permission or invitation for the fax to be sent"); *Panacci v. A1 Solar Power, Inc.*, No. 15-CV-00532-JCS, 2015 WL 3750112, at *3 (N.D. Cal. June 15, 2015) (discussing TCPA class definitions that are, and are not, fail safe classes).

For example, in *Onley*, the court concluded that plaintiff's initial TCPA class definition was an impermissible fail-safe class because it limited the class to call recipients who "had not previously consented to receiving such calls." *Onley,* at *10-11.  Similarly, in *Lindsay*, the court struck the TCPA class allegations on fail-safe grounds because "the proposed class consists solely of persons who can establish that defendant violated the TCPA."  *Lindsay*, at *3-4 (striking proposed class defined in part as all persons who "were sent telephone facsimile messages of material advertising the commercial availability of any property, goods, or services by or on behalf of Defendant [and] with respect to whom Defendant cannot provide evidence of prior express permission or invitation for the sending of such faxes [and] with whom Defendant does not have an established business relationship" (emphasis added)).  The court explained that "[d]etermining class membership will require the kind of individualized determinations – the absence of prior consent and the absence of a prior business relationship – precluded by Rule 23."  *Id.* at *5; *see also Taylor v. Universal Auto Group I, Inc*., No. 3:13–cv–05245–KLS, 2014 WL 6654270, at *22 (W.D. Wash. Nov. 24, 2014) (denying motion for class certification in TCPA class action, because "inclusion of the 'without prior consent' language in the national classes definition makes it a 'failsafe' class, as clearly the issue of consent is central to determining defendant's liability").

### 3.     Plaintiff's Primary Class Definition is a Fail Safe and Should be Stricken

Consent is the crucial *merits* issue in a TCPA case, and also "undoubtedly" an individualized issue.  *Gene and Gene LLC v. Biopay, LLC*, 541 F.3d 318, 327-329 (5th Cir. 2008).  Consent may be given orally and is deemed given anytime the called party supplies the number directly to the creditor.  *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961, 7991-92, ¶ 52 (2015) ("2015 Omnibus TCPA Ruling") ("For non-telemarketing and non-advertising calls, express consent can be demonstrated by the called party giving prior express oral or written consent, or, in the absence of instructions to the contrary, by giving his or her wireless number to the person initiating the autodialed or prerecorded call."); *Mais v. Gulf Coast Collection Bureau*, 768 F.3d 1110, 1121 (11th Cir. 2014) (FCC's "express consent" exemption is binding on district courts).

Plaintiff's class definition, therefore, does not set forth a set of identifiable objective criteria by which class members can be identified; rather it requires a merits inquiry to be determined on a person by person basis on the issue of consent.  *See*, *e.g.*, *Blair v. CBE Group, Inc.*, Case No. 13cv134–MMA (WVG), 2015 WL 5086375, at *8 (S.D. Cal. 2015) ("[D]etermining whether a particular class member provided his or her wireless phone number to an underlying creditor requires an individualized inquiry into the particular circumstances in which the debt arose, and such individualized inquiries predominate over any issue common to the class."). Instead, to ascertain membership in the class the Court does not look to precise objective factual criteria, but rather to whether legal elements have been met — such as the presence or absence of consent — to determine class membership in the first place.  If a class member has a valid claim he is in the class; if not, he is out.  Such a class can never be certified in the 11th Circuit or elsewhere.  *Bussey*, 562 F. App'x. at 787 (class definition must be based on "objective criteria"); *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 657 (7th Cir. 2015), *cert.*

19

*denied*, 136 S. Ct. 1161, 194 L. Ed. 2d 175 (2016); *Jamison v. First Credit Servs., Inc.*, 290

F.R.D. 92, 108 (N.D. Ill. 2013); *Messner*, 669 F.3d at 825 (merits of a class member's claim not

to be considered in determining class membership); *Kamar*, 375 F. App'x at 736; *Randleman v.*

*Fidelity Nat'l Title Ins*. Co, 646 F.3d at 352.  As such the class definition must be stricken.

### b.   The Primary Definition is Overbroad as it Includes Innumerable, Unascertainable, Members that Lack Article III Standing

As an offshoot of the Supreme Court's *Spokeo* decision, TCPA cases will now rarely, if

ever, be certifiable. This stems from the same analysis set forth in Ally's motion to dismiss

Plaintiff's complaint, above.  Specifically, the TCPA creates a mere procedural hurdle to making

a phone call, non-compliance with which does not, in and of itself, create any "concrete" harm to

class members.  Better stated — making phone calls "without consent" does not necessarily

cause harm.  Again, just because a call was *uninvited* does not mean it was unwanted or

detrimentally impactful.  Hence innumerable, unascertainable, members of Plaintiff's proposed

class lack Article III standing.  The class is, therefore, facially overbroad and uncertifiable.

### 1.   A Class Definition Cannot Include Members that Lack Article III Standing

"No class may be certified that contains members lacking Article III standing."  *Denney*

*v. Deutsche Bank AG*, 443 F.3d 253, 264 (2d Cir. 2006); *Mazza v. Am. Honda Motor,* 666 F.3d

581, 594 (9th Cir. 2012); *Dykes v. Dudek*, No. 4:11CV116/RS-WCS, 2011 WL 4904407, at *2;

*see also Kohen v. Pac. Inv. Mgmt. Co., LLC*, 571 F.3d 672, 677 (7th Cir. 2009) ("[I]f the [class]

definition is so broad that it sweeps within it persons who could not have been injured by the

defendant's conduct, it is too broad.");  *Messner*, 669 F.3d at 825 (same).

This rule has been described as one regarding the over breadth of a class definition for

Rule 23 purposes, and is not necessarily jurisdictional.  *Moore v. Apple Inc.*, 309 F.R.D. 532, 542

(N.D. Cal. 2015).  Nonetheless, a class that contains individuals that did not suffer any actual

harm is plainly uncertifiable.  *Id.* ("the inclusion of class members whom, by definition, could not have been injured is not only problematic because it demonstrates the over breadth of the proposed class, it is also indicative of the individualized inquiries that would be necessary to determine whether a class member has suffered any injury in the first place.").

### 2. It is Impossible to Identify Which Purported Class Members Did, or Did Not, Suffer Actionable *De Facto* Harm

Plaintiff's class definition is necessarily overbroad.  Indeed, it does not even mention "actual harm" as a component of the definition.  *See* Compl., ¶ 39.  As such, it is *per se* inappropriate.  *Conigliaro v. Norwegian Cruise Line Ltd.*, No. 05-21584-CIV, 2006 WL 7346844, at *3 (S.D. Fla. Sept. 1, 2006) ("the proposed class description 'must not be so broad as to include individuals who are without standing to maintain the action on their own behalf.'").

Nor can Plaintiff cure this defect via discovery.  Plaintiff cannot possibly identify which of his class members do, and do not, have Article III standing.  As noted above, the thrust of the problem is that an individual review of the state of mind of class members and their individual circumstances will be necessary to prove they suffered harm.  The Complaint says as much. Most of the "actual harm" suffered by class members is subjective — the experience of "aggravation," "waste[d] time," and the perception of an "intrusion" upon their seclusion. Compl., ¶ 43.[8]  Other forms of "actual harm" are economic, but not present across the entire class — *e.g.*, "consumers frequently have to pay their cell phone service providers."  *Ibid*.  And other forms are simply *de minimis* or pretended.  *Ibid.* (suggesting a loss of "battery life" was actual harm).  But finding class members that suffered each, or any, of these forms of harm is not administratively feasible.  *Bussey*, 562 F. App'x at 787 ("Administrative feasibility means that

---

8   *See Conigliaro v. Norwegian Cruise Line Ltd.*, No. 05-21584-CIV, 2006 WL 7346844, at *3 ("[C]ourts have declined to certify a class…when membership in the class is made contingent on the state of mind of putative class members.").

identifying class members is a manageable process that does not require much, if any, individual inquiry.").  And in the 11th Circuit, that is an essential showing that must be made *before* any merits-based review of a class.  *Varnes v. Home Depot USA*, No. 3:12-CV-622-J-39JBT, 2015 WL 5190648, at *2 (M.D. Fla. Sept. 4, 2015) (even "before proceeding to Rule 23(a), the Court must ensure the proposed class is adequately defined"); *Walewski v. ZeniMax Media, Inc.*, No. 6:11-CV-1178-ORL-28, 2012 WL 834125, at *4 (M.D. Fla. Jan. 30, 2012), report and recommendation adopted, No. 6:11-CV-1178-ORL-28, 2012 WL 847236 (M.D. Fla. Mar. 13, 2012), aff'd, 502 F. App'x 857 (11th Cir. 2012) ("Before engaging in the analysis required by Rule 23, the question of whether the class has been adequately defined should be considered.") (quotation omitted).

At bottom, the current definition is necessarily overbroad — numerous class members do not have Article III standing — and must be stricken.

## C.   Plaintiff's Sub-Class Definitions Are Also Facially Uncertifiable and must be Stricken

Plaintiff also offers two sub-class definitions:

> Sub-Class A
> (1) All persons in the United States (2) to whose cellular telephone number (3) Ally made a non-emergency telephone call (4) using the same dialing system(s) used to call Plaintiff or an artificial or prerecorded voice (5) within 4 years of the complaint (6) who was not the person alleged to owe the debt in question.

 And

> Sub-Class B
> (1) All persons in the United States (2) to whose cellular telephone number (3) Ally made a non-emergency telephone call (4) using the same dialing system(s) used to call Plaintiff or an artificial or prerecorded voice (5) within 4 years of the complaint (6) after that person had instructed Ally to cease calls to that number.

The flaws apparent in these definitions are legion.

First, to the extent each of these "Sub-Classes" is intended to amend or adopt the Primary Class, they stand or fall with that Primary Class and should be stricken along with it for the reasons set forth in Section IV.B., above.

To the extent they are intended to stand on their own, however, they are no better off. For instance, Sub-Class A includes individuals that consented to receive calls. Yet a class definition that includes numerous individuals lacking valid claims is uncertifiably broad. *Conigliaro v. Norwegian Cruise Line Ltd.*, No. 05-21584-CIV, 2006 WL 7346844, at *3.

Similarly, both subclasses — like the primary class definition — include innumerable, unascertainable, members that lack Article III standing. As to Sub-Class A, not every non-debtor that received a call from Ally suffered actual harm. Indeed, the Sub-Class is not limited to debt collection calls so the identity of the call recipients as non-debtors is a non-sequitur. As noted above, Sub-Class A does not carve out invited calls so there is no basis to determine that *anyone* in Sub-Class A suffered an actionable harm. Sub-Class B offers some objective criteria to hint at a call recipient's state of mind — they asked for calls to cease, after all — but that is a poor predicate for tracking actual harm. In a recurring payment situation a borrower may not want further calls in Month 1 because they made a payment arrangement, but would certainly appreciate a reminder in Month 6 when they forgot to timely write their monthly auto loan check. The simple fact of the matter is that people change their mind and what they want on Day 1 might not be what they want on Day 75. But since "harm" in this context turns on something subjective — *i.e.* a willingness to receive calls — defining a proper class requires tracking those fickle changes of heart. This simply cannot be done on any objective basis or via an administratively feasible method. *Bussey*, 562 F. App'x at 787 ("Administrative feasibility means that identifying class members is a manageable process that does not require much, if any, individual inquiry."). Instead, "[d]rawing class boundaries around such hopelessly subjective

standards yields considerable indeterminacy and imprecision." *Conigliaro v. Norwegian Cruise Line Ltd.*, No. 05-21584-CIV, 2006 WL 7346844, at *4.

Moreover, even if class members that suffered harm from *one* call can be identified, Plaintiff would have to demonstrate that a harm was suffered by way of *each* call to that class member for which he hopes to recover in this case.  Again, each individual call violating the statute — if there were any — is a separate claim,[9] requiring a separate showing of standing. *See Garcia v. Kashi Co.*, 43 F. Supp. 3d at 1392; *Toback v. GNC Holdings, Inc.*, No. 13-80526-CIV, 2013 WL 5206103, at *4.

And Subclass B suffers from a larger, although related flaw.  Revoking consent is context specific and would necessarily entail the file by file review of class member accounts to determine what, exactly, the phrase "cease calling" accomplished under the circumstances.  *See, e.g., Soulliere v. CFI Resorts Management, Inc.*, No. 8:13-cv-2860 (M.D. Fla. 2015), corrected judgment dated May 28, 2015, Doc. 99 (jury finding that phrase "please don't call my cell phone" did not effectuate a valid revocation in that case); *In re Runyan*, 530 B.R. 801, 807 (M.D. Fla. 2015) (consumer telling caller that "it could contact his attorney with any further questions" was not express revocation); *Buchholz v. Valarity, LLC*, No. 4:13CV0362 TIA, 2015 WL 590381, at *2 (E.D. Mo. Feb. 11, 2015) (question of fact whether phrase "stop calling me" was sufficient to revoke consent since the caller did not identify himself on the call). And consent can always be re-provided after a revocation occurs (*see, e.g., AJ Reyes v. Educ. Credit Mgmt. Corp.*, No. 315CV00628BASJMA, 2016 WL 2944294, at *3 (S.D. Cal. May 19, 2016)) meaning that a complete review of each customer file would need to be conducted to determine whether consent was ever "re-provided*." See Shamblin v.Obama for Am.*, No. 13-2428, 2015 WL 1909765, at *7

---

[9] *Knight v. Columbus, Ga.,* 19 F. 3d at 582 (each violation of a statute gives rise to a new cause of action); *Holtzman*, 2010 WL 4177150, *5 ("each instance of a violation [of the TCPA] is independently actionable.").

(M.D. Fla. Apr. 27, 2015) ("[T]here can never be common answers to the question[] of whether… the subscriber consented to be called… [t]here is no 'classwide' proof on these outcome-determinative issues.").  This is so because Ally has a "constitutional right to a jury determination as to whether any person consented to receiving calls to their cellular telephone." *Shamblin*, 2015 WL 1909765, at *7 (citing *Rink v. Cheminova, Inc*., 203 F.R.D. 648, 652 (M.D. Fla. 2001)).  For these reasons too, therefore, Subclass B could never be certified and should be stricken here and now. *Id.*; *see, e.g.*, *Wolfkiel v. Intersections Ins. Servs. Inc*., 303 F.R.D. 287, 293 (N.D. Ill. 2014) (striking revocation class as uncertifiable because "in order to determine whether each potential class member did in fact revoke his or her prior consent at the pertinent time, the Court would have to conduct classmember-specific inquiries for each individual").

## V.   CONCLUSION

For the foregoing reasons, Ally respectfully requests the Court dismiss the Complaint and strike the class allegations.

Respectfully submitted this 28th day of June, 2016.

 */s/ Eric Troutman*
Eric J. Troutman, Trial Counsel (PHV)
Scott D. Goldsmith (PHV)
Divya S. Gupta (PHV)
Alexandra N. Krasovec (PHV)
DORSEY & WHITNEY LLP
600 Anton Boulevard, Suite 2000
Costa Mesa, California 92626-7655
Telephone: (714) 800-1400
Facsimile: (714) 800-1499
troutman.eric@dorsey.com
goldsmith.scott@dorsey.com
gupta.divya@dorsey.com
krasovec.alexandra@dorsey.com

R. Frank Springfield (FL Bar # 0010871)
Jacqueline Simms-Petredis (FL Bar # 0906751)
BURR & FORMAN LLP
201 North Franklin Street, Suite 3200
Tampa, Florida 33602
Telephone: (813) 221-2626
Facsimile: (813) 357-3534
fspringfield@burr.com
jsimms-petredis@burr.com

Attorneys for Defendant
ALLY FINANCIAL INC.

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served a copy of the within and foregoing **DEFENDANT ALLY FINANCIAL, INC.'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND STRIKE CLASS ALLEGATIONS** to Plaintiff's counsel of record by uploading a true copy of the same through CM/ECF and depositing a true copy of same in the U.S. Mail, proper postage prepaid, properly addressed to the following:

> William Peerce Howard, Esq.
> Amanda J. Allen, Esq.
> The Consumer Protection Firm
> 210 A-South MacDill Avenue
> Tampa, FL 33609
> Email: Billy@TheConsumerProtectionFirm.com
> Email: Amanda@TheConsumerProtectionFirm.com
>
> Keogh Law, LTD
> Timothy J. Sostrin
> Suite 3390
> 55 W. Monroe St.
> Chicago, IL 60603
> Email: TSostrin@KeoghLaw.com
>
> Attorneys for Plaintiff

This 28th day of June, 2016.

> _/s/ Eric Troutman_____
> Eric Troutman