UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

DONELL L. TILLMAN,
individually and on behalf
of all others similarly
situated,

      Plaintiff,

v.                      Case No: 2:16-cv-313-FtM-99CM

ALLY FINANCIAL INC.,

      Defendant.

_____

**OPINION AND ORDER**

This matter comes before the Court on defendant's Motion to
Dismiss Plaintiff's Complaint and Strike Class Allegations (Doc.
#29) filed on June 28, 2016. Plaintiff filed a response (Doc.
#34) on July 18, 2016, and defendant filed a reply. (Doc. #46.)
The parties submitted various supplemental authorities. (Docs.
## 38, 39, 42, 43, 52, 56, 57.) For the reasons set forth below,
the motion is denied.

**I.**

On April 28, 2016, plaintiff Donell L. Tillman (plaintiff or
Tillman) filed a one-count class-action complaint for relief,
alleging that defendant Ally Financial, Inc. (defendant or Ally)
violated the Telephone Consumer Protection Act (TCPA), 47 U.S.C.
§ 227, by placing unauthorized calls to plaintiff's (and others)
cellular phones using an "automatic telephone dialing system"

(ATDS), as that term is defined by the TCPA, 47 U.S.C. § 227(a)(1).[1] (Doc. #1.)

As alleged in plaintiff's Complaint, in December 2015, plaintiff began receiving calls on his cellular phone from Ally, seeking to reach an individual named Phillip Everett (Everett). (Id. at ¶ 9.)  Plaintiff is not a party to any debt, contract, or obligation with Ally, and has never provided his cellular telephone number to Ally for any purpose.  (Id. at ¶ 18.)  On at least one occasion in December 2015, plaintiff notified Ally that he was not

---

[1] The TCPA defines an ATDS as equipment which has the capacity to both: (1) store or produce telephone numbers to be called, using a random or sequential number generator, and (2) dial such numbers. 47 U.S.C. § 227(a)(1).  Plaintiff claims that defendant violated 47 U.S.C. § 227(b)(1)(A)(iii), which provides in pertinent part that

[i]t shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—

(A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice —
        ...

(iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call....

47 U.S.C. § 227(b)(1)(A)(iii).

Everett, that Everett could not be reached at the number, and requested that Ally cease further calls. (Id. at ¶ 10.) Despite this, Ally continued to call Tillman approximately 22 times throughout January, February, and March of 2016. (Id. at ¶ 11.) Plaintiff states that "several of the calls" were placed using an artificial or pre-recorded voice message. (Id. at ¶ 14.) If plaintiff did not answer, a pre-recorded voicemail was left. (Id. at ¶ 14.) Any calls which did not use a pre-recorded voice message were connected to an outsourced call center upon answer or connection to voicemail. (Id. at ¶ 15.) The Complaint does not allege that plaintiff was charged for the calls.[2]

As a result of these calls, plaintiff's Complaint alleges the following harm:

> Ally has caused consumers actual harm, not only because consumers were subjected to the aggravation that necessarily accompanies these calls, but also because consumers frequently have to pay their cell phone service providers for the receipt of such calls; such calls are also an intrusion upon seclusion, diminish cellular battery life, and waste time.[3]

---

[2] The fact that plaintiff was not charged is not dispositive of his claim. See Osorio v. State Farm Bank, F.S.B., 746 F.3d 1242, 1257-28 (11th Cir. 2014) (interpreting the TCPA to mean that calls are not exempt from TCPA protections even if a party is not charged for the call).

[3] In his response to the motion to dismiss, plaintiff states that he has suffered "at least four distinct injuries in fact," although he only goes on to discuss three injuries, including: a violation of plaintiff's private, substantive rights under the TCPA; invasion of privacy; and that defendant's calls occupied plaintiff's cellular telephone line and device. (Doc. #34, pp. 7-16.)

(Doc. #1, ¶ 40.)  Defendant believes that plaintiff's Complaint should be dismissed for lack of constitutional standing in light of the Supreme Court's recent decision in Spokeo, Inc. v. Robins, 136 S. Ct. 1540 (2016).  Should the Court deny the dismissal request, defendant moves in the alternative to strike the Complaint's "fail-safe" class definition.

## II.

### A. Plaintiff's Article III Standing to Maintain this Action

"[T]he core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III."  Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992). Constitutional standing sufficient to maintain an action in federal court requires, inter alia, that a plaintiff have "suffered an injury in fact."  Spokeo, 136 S. Ct. at 1547.  "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'"  Id. at 1548 (quoting Lujan, 504 U.S. at 560). The party invoking federal jurisdiction has the burden of establishing injury-in-fact.  Lujan, 504 U.S. at 561.

Defendant's basis for dismissal relies primarily on Spokeo for support, arguing that plaintiff has only alleged a violation of the statute, without any resulting harm, which is per se

insufficient to establish standing after Spokeo.  (Doc. #29, pp. 5-6.)  Plaintiff responds that he has standing based upon an intrusion-upon-seclusion tort theory, and not upon a bare procedural violation, which plaintiff concedes would be insufficient to confer standing under Spokeo.

In Spokeo, the plaintiff filed a class-action complaint, alleging certain procedural violations of the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681 et seq., against an online "people search engine" operator accused of creating inaccurate consumer reports.  136 S. Ct. at 1544.  The Spokeo case primarily concerned the injury-in-fact of standing's three elements, addressing the "concrete injury" requirement.  The Supreme Court noted that a "concrete injury" "must be 'de facto'; that is, it must actually exist."  136 S. Ct. at 1548.  But the Supreme Court recognized that "concrete" does not necessarily mean "tangible," and "intangible injuries can nevertheless be concrete."  Id.  "In determining whether an intangible harm constitutes injury in fact, both history and the judgment of Congress play important roles."  Id. (emphasis added)  The Supreme Court further recognized that a plaintiff does not automatically satisfy the injury-in-fact requirement "whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right."  Id. at 1549.  For example, a plaintiff could not allege

a "bare procedural violation" absent harm and satisfy the injury-in-fact requirement.[4]  Id.

In this case, the injuries alleged in plaintiff's Complaint are not mere "procedural" statutory violations; rather, they are precisely the kinds of harm the TCPA aims to prevent.  Both before and after Spokeo, courts have recognized on multiple occasions that in enacting the TCPA Congress was expressly concerned about protecting consumers' privacy rights to be free from unwanted autodialed calls.  For example, in Osorio, the Eleventh Circuit cited Senator Hollings, the TCPA's sponsor, describing these calls as "the scourge of modern civilization.  They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall."  Id. at 1255-56 (quoting 137 Cong. Rec. 30,821 (1991)).  See also Hooters of Augusta, Inc. v. Am. Global Ins. Co., 157 F. App'x 201, 206 (11th Cir. 2005) (noting that unsolicited faxes are akin to unwanted telephone calls, and quoting H.R. Rep. 102-317, at 5-6 (1991), which states that "[t]he purpose of the bill (H.R. 1304) is to protect residential telephone subscriber privacy rights by restricting certain commercial solicitation and advertising uses of the telephone and related

---

[4] The Spokeo court cited an agency's dissemination of a wrong consumer zip code as an example of a statutory violation for which the FCRA purports to provide redress, but which likely causes harm too "abstract" to confer standing.  136 S. Ct. at 1550.

telecommunications equipment.... H.R. 1304 is designed to return a measure of control to both individual residential telephone customers and owners of facsimile machines."); <u>Palm Beach Golf Center-Boca, Inc. v. John G. Sarris, D.D.S., P.A.</u>, 781 F.3d 1245, 1252-53 (11th Cir. 2015) (examining the legislative history of the TCPA to find that the occupation of plaintiff's fax machine by an unsolicited fax advertisement was a cognizable right created by Congress and establishes a particularized and concrete injury under Article III, even though there was no evidence anyone printed or saw the faxes); <u>Mims v. Arrow Fin. Servs., LLC</u>, 132 S. Ct. 740, 745 (2012) (noting Congress' findings in enacting the TCPA, including that "unrestricted telemarketing [] can be an intrusive invasion of privacy"); <u>Bagg v. USHealth Group, Inc.</u>, Case No. 6:15-cv-1666-Orl-37GJK, 2016 WL 1588666, *3 (M.D. Fla. Apr. 20, 2016) (citing <u>Park Univ. Enters., Inc. v. Am. Cas. Co. of Reading, PA</u>, 442 F.3d 1239, 1249 (10th Cir. 2006) (collecting cases), <u>abrogated on other grounds by</u> <u>Magnus, Inc. v. Diamond State Ins. Co.</u>, 545 F. App'x 750, 753 (10th Cir. 2014) (finding that sending a fax in violation of the TCPA constitutes a tort, stating that "'[c]ourts have consistently held that the TCPA protects a species of privacy interest in the sense of seclusion,' and recognize that the sending of an unsolicited fax constitutes an invasion of privacy")). Other district courts have also recognized that the receipt of unwanted phone calls constitute a concrete injury under the TCPA.

See, e.g., Caudill v. Wells Fargo Home Mtg., Inc., Civ. No. 5:16-066, 2016 WL 3820195, at *2 (E.D. Ky. July 11, 2016) (calls caused harms "such as the invasion of privacy [that] have traditionally been regarded as providing a basis for a lawsuit in the United States"); Rogers v. Capital One Bank (USA), N.A., No. 1:15-CV-4016, 2016 WL 3162592, at *2 (N.D. Ga. June 7, 2016); Mey v. Got Warranty, Inc., 5:15-cv-101, 2016 WL 3645195, at *7 (N.D. W. Va. 2016) (collecting cases).

Furthermore, the Federal Communication Commission (FCC)[5] has stated that "[t]he intent of Congress, when it established the TCPA in 1991, was to protect consumers from the nuisance, invasion of privacy, cost, and inconvenience that autodialed and prerecorded calls generate.  Congress found that consumers consider these kinds of calls, 'regardless of the content or the initiator of the message, to be a nuisance and an invasion of privacy.'" Rules & Regulations Implementing the TCPA, 30 F.C.C.R. 7961, 7979-80 (July 10, 2015) (quoting S. Rep. No. 102-178, 1st Sess., 102nd Cong. (1991) at 2, 4-5).

"The actual or threatened injury required by Art. III may exist solely by virtue of 'statutes creating legal rights, the invasion of which creates standing . . . .'" Warth v. Seldin, 422

---

[5] The FCC is the entity tasked with "prescrib[ing] regulations to implement" the TCPA.  Murphy v. DCI Biologicals Orlando, LLC, 797 F.3d 1302, 1305 (11th Cir. 2015) (quoting 47 U.S.C. § 227(b)(2)).

U.S. 490, 500 (1975) (quoting Linda R.S. v. Richard D., 410 U.S. 614, 617 n.2 (1973)).  Here, the TCPA is a consumer protection statute in which Congress conferred upon all consumers the right to be free from unwanted autodialed calls.  Thus, the Court finds that based upon the allegations that plaintiff received unsolicited ATDP telephone communications which intruded upon his seclusion, plaintiff has alleged a particularized and concrete injury sufficient to confer Article III standing.[6]  See Church v. Accretive Health, No. 15-15708, 2016 WL 3611543, at *3 (11th Cir. July 6, 2015) (per curium) (not receiving information to which one is statutorily entitled is a "concrete" injury).[7]

---

[6] Because the Court has determined that intrusion-upon-seclusion is a sufficient injury to establish constitutional standing, plaintiff's remaining allegations of harm, including diminution of battery life and waste of time, need not be addressed.

[7] The post-Spokeo case cited in defendant's Notice of Supplemental Authority (Doc. #52) is inapposite.  In Nicklaw v. CitiMortgage, --- F.3d ---, No. 15-14216, 2016 WL 5845683, at *3 (11th Cir. Oct. 6, 2016), the court applied Spokeo to reject the argument that "the intangible harm that occurs when the discharge of a mortgage is not timely recorded constitutes a concrete injury." (emphasis added).  There, the court found it dispositive that Nicklaw failed to allege a harm nor a material risk of harm, stating that "[h]is complaint does not allege that he lost money because CitiMortgage failed to file the certificate.  It does not allege that his credit suffered.  It does not even allege that he or anyone else was aware that the certificate of discharge had not been recorded during the relevant time period."  Id.

Because in this case plaintiff has alleged a harm that has been recognized by the courts as particularized and concrete in the context of the TCPA, Nicklaw is not directly applicable here.

Defendant further argues that because the injuries alleged in the Complaint are "de minimis" and do not constitute a "concrete harm," plaintiff does not have standing under Article III. Defendant's contention is unpersuasive.  "The Supreme Court has rejected the argument that an injury must be 'significant'; a small injury, 'an identifiable trifle,' is sufficient to confer standing." Common Cause/Georgia v. Billups, 554 F.3d 1340, 1351 (11th Cir. 2009) (quoting United States v. Students Challenging Regulatory Agency Procedures, 412 U.S. 669, 689 n.14 (1973)). Defendant also argues that plaintiff must demonstrate he possesses standing for each separate call and that plaintiff cannot recover for all calls absent a showing that each call caused meaningful harm.  (Doc. #29, pp. 2, 9-10.)  As the Court has discussed, plaintiff has standing to proceed based upon the allegations that he received autodialed calls.  Any arguments concerning whether plaintiff and consumers were harmed by calls they did not receive or notice is more appropriately addressed at the class certification stage.

## B. Plaintiff's Proposed "Fail-Safe" Class

Finally, defendant moves in the alternative to strike the Complaint's class allegations on the ground that plaintiff has proposed an impermissible "fail-safe" class.  A fail-safe class is one whose definition incorporates the elements of a successful legal claim, such that determining whether an individual or entity

is a member of the class "front-ends a merits determination on [the defendant's] liability." Alhassid v. Bank of Am., N.A., 307 F.R.D. 684, 694 (S.D. Fla. 2015); see Kamar v. RadioShack Corp., 375 F. App'x 734, 736 (9th Cir. 2010) ("The fail-safe appellation is simply a way of labeling the obvious problems that exist when the class itself is defined in a way that precludes membership unless the liability of the defendant is established."). Being granted membership in the class is thus synonymous with a victory on the underlying claim. Young v. Nationwide Mut. Ins. Co., 693 F.3d 532, 538 (6th Cir. 2012) ("[A] 'fail-safe' class is one that includes only those who are entitled to relief. . . . [E]ither those 'class members win or, by virtue of losing, they are not in the class' and are not bound [by the judgment]." (quoting Randleman v. Fid. Nat. Title Ins. Co., 646 F.3d 347, 352 (6th Cir. 2011))).

The class and subclasses proposed in plaintiff's Complaint consist of:

> All persons in the United States to whose cellular telephone number Ally made a non-emergency telephone call using the same dialing system(s) used to call Plaintiff or an artificial or prerecorded voice within 4 years of the complaint where Ally did not have express consent to call said cellular telephone number.
>
> **Sub-Class A**
> All persons in the United States to whose cellular telephone number Ally made a non-emergency telephone call using the same dialing system(s) used to call Plaintiff or an artificial or prerecorded voice within 4 years of the complaint who was not the person alleged to owe the debt in question.

**Sub-Class B**
All persons in the United States to whose cellular telephone number Ally made a non-emergency telephone call using the same dialing system(s) used to call Plaintiff or an artificial or prerecorded voice within 4 years of the complaint after that person had instructed Ally to cease calls to that number.

(Doc. #1, ¶¶ 37-39.) The Court agrees that, as written, the proposed class and sub-classes appear "fail-safe." Rather than simply requiring, for example, that an individual have received the same autodialed call plaintiff received, the class incorporates the elements of a viable autodialed call claim, including the applicable statute of limitations. See 47 U.S.C. § 227(b)(1)(A)(iii); 28 U.S.C. § 1658(a). Analyzing whether a particular individual is a proper member of plaintiff's class will, therefore, result in a merits-based determination on defendant's liability under the TCPA to that individual.

It is less clear, however, that such a class is "impermissible." The Eleventh Circuit has not yet addressed whether a fail-safe class can nevertheless be certified, and there is a split of authority among the Circuit Courts that have decided the issue. See Zarichny v. Complete Payment Recovery Servs., Inc., 80 F. Supp. 3d 610, 624 (E.D. Pa. 2015) (collecting cases). Notwithstanding, this Court recently agreed with those district courts that have held that such argument is more appropriately raised at the class-certification stage. See JWD Automotive, Inc. v. DJM Advisory Group LLC, --- F. Supp. 3d ---, 2016 WL 6835986,

at *5 (M.D. Fla. Nov. 21, 2016) (citing Arkin v. Innocutis Holdings, LLC, No. 8:16-cv-321-T-27TBM, 2016 WL 3042483, at *7 (M.D. Fla. May 26, 2016); Mauer v. Am. Intercontinental Univ., Inc., No. 16 C 1473, 2016 WL 4698665, at *3 (N.D. Ill. Sept. 8, 2016); Haghayeghi v. Guess?, Inc., No. 14-CV-00020 JAH-NLS, 2015 WL 1345302, at *6 (S.D. Cal. Mar. 24, 2015)). Consequently, the Court denies defendant's request to strike plaintiff's proposed class at this time.

Accordingly, it is hereby

**ORDERED AND ADJUDGED:**

Defendant's Motion to Dismiss Plaintiff's Complaint and Strike Class Allegations (Doc. #29) is **DENIED.**

**DONE and ORDERED** at Fort Myers, Florida, this ___30th___ day of November, 2016.

JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Counsel of Record

- 13 -