**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**

Donell L. Tillman, individually and on behalf of
all others similarly situated

               Plaintiff,                             CASE NO. 2:16-cv-00313-UA-CM

     v.

Ally Financial Inc.,                        **DISPOSITIVE MOTION**

               Defendant.

                                       /

## DEFENDANT ALLY FINANCIAL, INC.'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

(This motion and several exhibits filed in support thereof have been electronically filed in redacted form pending the Court's ruling on Ally's concurrently filed Motion to Seal. The Motion to Seal requests permission to file under seal unredacted copies of these documents because Plaintiff's counsel has designated the documents and information Confidential pursuant to the Stipulated Protective Order in this case (Doc. 40) and has not agreed to withdraw the Confidential designation. Ally has concurrently served Plaintiff's counsel with a redacted and unredacted copy of this filing.)

COMES NOW Defendant Ally Financial Inc. ("Ally"), by and through its undersigned counsel, and hereby moves the Court as follows:

1. Pursuant to Federal Rule of Civil Procedure 56 for summary judgment or, in the alternative, partial summary judgment in favor of Ally as to Count I of Plaintiff Donell L. Tillman's ("Plaintiff") Complaint, on the grounds that Plaintiff lacks statutory standing to assert a claim under the Telephone Consumer Protection Act ("TCPA") for each of the calls at issue;

2. Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 56 for summary judgment[1] or, in the alternative, partial summary judgment in favor of Ally as to Count I of Plaintiff's Complaint on the ground that Plaintiff cannot affirmatively establish Article III standing for any calls that Plaintiff is unable to prove caused him concrete harm.

In support of its motion, Ally concurrently submits the Declaration of Scott Goldsmith and accompanying exhibits cited therein, Ally's Statement of Material Facts contained herein, and copies of all evidence referenced in such Statement.

---

[1] *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) ("When the jurisdictional basis of a claim is intertwined with the merits, the district court should apply a Rule 56 summary judgment standard when ruling on a motion to dismiss which asserts a factual attack on subject matter jurisdiction.").

## I.  INTRODUCTION

Plaintiff brings this case on his own behalf, and on behalf of a proposed class of cell phone owners that received calls in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA").  But Plaintiff is neither a "called party" with statutory standing to bring his individual claim, nor can he show a concrete harm regarding each of the calls at issue.

Despite his false allegations in the Complaint, and false interrogatory responses, Plaintiff eventually admitted he was never the subscriber to the cell phone number at issue. Indeed, he was not even the sole user of that phone and cannot identify which calls Ally made to him while he was in possession of the phone.  Additionally, he used an application— called "Block It"—which automatically and immediately disconnects calls from blocked phone numbers before they ring through.  As Plaintiff admits that he "blocked" Ally's number using "Block It," he did not actually receive most of the calls he now sues for. Plaintiff lacks standing to sue for calls that he did not receive, either because someone else was using the phone or due to the use of a call-blocking application that thwarted connection of the call.

For the reasons set forth below, therefore, Ally's motion should be granted.

## II.  STATEMENT OF MATERIAL FACTS

In support of its motion for summary judgment, Ally states that there is no genuine dispute with respect to the following material facts:

**A.  Plaintiff is not the Subscriber or Sole User of the Phone Number at Issue**

1.      At all times relevant to this case, Ms. Charles' father, Joseph Marcel Charles, who is not a party to this case, had a MetroPCS family plan account (hereinafter, the "Account").  *See* Plaintiff's Deposition Transcript, at 24:19-22, attached as Exhibit A to the Declaration of Scott D. Goldsmith ("Goldsmith Dec.").

2.      The Account was in Mr. Charles' name.  *See id.* at 17:1-7.

3.      Prior to November 2015, Plaintiff sometimes used a cellular phone that was tied to the Account.  *See id.* at 63:14-64:1.

4.      In November 2015, Ms. Charles and Plaintiff visited a MetroPCS store, where Ms. Charles upgraded to a new cellular phone: specifically, the phone that is at issue in this case (the "Phone").  *See id.* at 48:2-14.

5.      In order to connect the Phone to the Account, Ms. Charles had to provide the PIN code for the Account.  *See id.* at 50:1-51:14.

6.      As Plaintiff put it at his deposition: "I don't know the PIN to the account, so I can't make a change."  *See id.* at 50:9-10.

7.      The phone number assigned to the Phone was 561-201-5001.  *See* Pl. Resp. to Ally Int. No. 5, attached as Exhibit D to Goldsmith Dec.

8.      Plaintiff sometimes used the Phone but was not the only user of the Phone. *See id.* at 19:16-19.

9.      Plaintiff's girlfriend, Charnelle Charles, who is not a party to this case, sometimes used the Phone.  *See id.*

10.     Ms. Charles was entitled to "[j]ust take the [P]hone" at any time.  *See id.* at 22:15-18.

11.     There was no specific schedule of days or times when Plaintiff was entitled to exclusive use of the Phone.  *See id.* at 22:19-20.

12.     Plaintiff sometimes received calls on the Phone from callers looking to speak with Ms. Charles.  *See id.* at 69:23-70:4.

13.     Plaintiff does not know who else, other than Ms. Charles, may have used the Phone when it was with Ms. Charles.  *See id.* at 20:12-13.

14.     At his deposition, Plaintiff described the Phone as follows: "[I]t's her dad's phone, the phone is in her dad's name . . ."  *See id.* at 16:17-18.

15.     During the three-month period in which the calls at issue in this case allegedly occurred, there were times when the Phone was in the possession of Ms. Charles, and was not in Plaintiff's possession.  *See* Pl. Dep. Tr. at 179:23-25; 180:1-7.

16.     Plaintiff does not know whether Ms. Charles "had the phone when they [Ally] called."  *See id.* at 178:24-179:5.

17.     Ms. Charles told Plaintiff that, when she had the Phone, she sometimes would receive wrong number calls.  *See id.* at 80:21-81:2.

**B.  Plaintiff Falsely Represented that He Was the Subscriber to the Phone**

18.     In his Complaint, Plaintiff falsely stated that he was the sole owner, and sole user, of the Phone.  *See* Compl. ¶ 12.

19.     Plaintiff repeated this false allegation in a subsequent, sworn response to Ally's interrogatories.  *See* Pl. Resp. to Ally Int. No. 10, attached as Exhibit D to Goldsmith Dec.

**C. Plaintiff's Use of the "Block It" Application Prevented Calls from Ally from Connecting**

20.     On or about the end of 2015 or the beginning of 2016, Plaintiff downloaded an application called Metro Block It ("Block It") to prevent receipt of calls.  *See* Pl. Dep. Tr. at 76:18-25.

21.     Plaintiff added Ally's number to the Block It application on January 30, 2016, after a call came in from Ally. *See* Pl. Dep. Tr..at 76:18-25; 86:17-25; 87:1-22; Ex. 3 to Pl. Dep. Tr., attached as Exhibit B to Goldsmith Dec.

22.     According to Block It's advertisements, calls from blocked numbers are immediately disconnected and voicemails cannot be left.  *See* Pl. Dep. Ex. 4, attached as Exhibit C to Goldsmith Dec; *See* Deposition of Matt Rateliff of First Orion Corp., dated January 6, 2017 (the "Rateliff Depo."), at 19:10-25; 20:1-3, attached as Exhibit F to Goldsmith Dec.; Ex. 2 to Rateliff Depo., attached as Exhibit G to Goldsmith Dec.

23.     Block It is designed to block calls by immediately disconnecting incoming calls from a user's block list.   *See* Rateliff Depo. at 8:23-25; 9:1-3; 11:1-17; 20:18-25; 21:1-25; 22:1-6; 24:2-19.

24.     Block It successfully blocked calls from Ally to the Phone after Ally's phone number was added to the block list.  *See* Rateliff Depo. Ex. 9, attached as Exhibit H to Goldsmith Dec.; Rateliff Depo. at 85:16-25; 86:1-3; 90:2-25; 91:1-14; 93:20-25; 94; 1-7, 22-25; 95:1-3.

25.     Block It's call blocking history for the Phone shows at least 7 calls from Ally were successfully blocked.  *See* Rateliff Depo. Ex. 9, attached as Exhibit H to Goldsmith Dec.

26.     Any other calls from Ally not reflected in Block It's call blocking history did not require blocking because the Phone was either turned off or out of service.  *See* Rateliff Depo. at 94:22-25; 95:1-23.

**D.  Plaintiff Was Not Harmed by Any of Ally's Calls**

27.     Plaintiff identified twenty-two (22) alleged calls from Ally that are at issue (the "Calls").  *See* Ex. 3 to Pl. Dep. Tr.; Pl. Supp. Int. Resp. Nos. 6 and 7, attached as Exhibit E to Goldsmith Dec.

28.     Plaintiff alleges that the 22 phone calls at issue were meant for an Ally customer named Phillip Everett, who is not a party to this case.  *See* Compl. ¶¶ 9, 14, 18.

29.     The Account allowed unlimited use of the Phone for a fixed monthly cost. *See* Pl. Dep. Tr. at 49:11:25.

30.     Plaintiff paid "like 20, 30 dollars" toward the monthly bills associated with the Account, while Ms. Charles paid the rest on her credit card.  *See id.* at 60:23-61:4.

31.     The Phone had a call-waiting feature.  *See id.* at 193:3-8.

32.     The Calls did not cause physical harm to Plaintiff.  *See id.* at 161:23-24 and 165:8-17.

33.     The Calls did not damage the Phone.  *See id.* at 161:20-22.

34.     Plaintiff only needed to charge the Phone's battery "[l]ike once a day, or when I sleep."  *See id.* at 69:4-6.

35.     Plaintiff has not received, or sought out, any medical treatment as a result of any alleged stress caused by the Calls.  *See id*. at 163:3-5.

36.     In addition, Plaintiff noted that he has no specific personal recollection of a number of the calls at issue.  *See id*. at 169:12-17, 169:21-25;170:1-10, 171:22-25, 172:13-173:3, 173:4-8, and 177:18-23.

## III.  ARGUMENT

### A.  Legal Standard on Summary Judgment Motion

A district court should grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *See Furcron v. Mail Ctrs. Plus*, No. 15-cv-14595, 2016 U.S. App. LEXIS 22330, at *11 (11th Cir. Dec. 16, 2016) (quoting Fed. R. Civ. P. 56(a)).  Factual disputes are genuine "when the evidence is such that a reasonable jury could render a verdict for the non-movant," and when such factual disputes "have a real basis in the record."  *Melton v. Abston*, No. 15-cv-11412, 2016 U.S. App. LEXIS 20681, at *17 (11th Cir. Nov. 18, 2016).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion."  *Josendis v. Wall to Wall Residence Repairs Inc.*, 662 F.3d 1292, 1314 (11th Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  However, "[o]nce the moving party makes the required showing, the burden shifts to the non-moving party to rebut that showing by producing affidavits or other relevant and admissible evidence beyond the pleadings."  *Josendis*, 662 F.3d at 1312.  At that point, "[a] mere scintilla of evidence in support of the nonmoving party will not suffice to overcome a motion for summary judgment."  *Young v. City of Palm Bay*, 358 F.3d 859, 860 (11th Cir. 2004).

**B.  Plaintiff Lacks Statutory Standing to Bring his TCPA Claim**

In a recent decision, The Honorable Karla R. Spaulding of this Court noted that federal case law is "sharply divided on the question of who has standing to bring claims under the TCPA."  *Haight v. Bluestem Brands, Inc.*, No, 6:13-cv-1400, 2015 U.S. Dist. LEXIS 107010, at *12 n. 4 (M.D. Fla. May 14, 2015).  Judge Spaulding described several benchmarks of statutory standing under the TCPA that are currently in use.  *Id*.  Plaintiff's TCPA claim does not meet any of these benchmarks.  It therefore should be dismissed.

In the Complaint, Plaintiff misleadingly suggests that he was the sole user of the Phone.  *See* Compl. ¶ 12.  In particular, the Complaint states as follows:

> At all times relevant herein, Plaintiff has been the user, and has exercised dominion and control of his cellular telephone number that received the subject calls which form the basis of this action."

*Id*.

At the pleading stage of this case, when Ally moved to dismiss this action based on Plaintiff's lack of standing (*see* Doc. 29), the Court gave Plaintiff the benefit of the doubt that the above allegation was true.  *See* Nov. 30, 2016 Opinion and Order (Doc. 58) (the "Order").  Accordingly, the Court referred to the Phone as "his [Plaintiff's] cellular phone," (*id*. at 2), and "plaintiff's cellular line" (*id*. at 3 n. 3).  *Id*. at 6-10. However, Plaintiff's deposition testimony in this case has revealed that the above allegation is, in fact, false.  As explained below (*see* § III, *infra*), the Phone did not belong to Plaintiff.  The Phone belonged to his girlfriend's father.  Plaintiff was not the sole, or even the primary, user of the Phone.[2]

---

[2] Ally's counsel asked Plaintiff's counsel to amend the Complaint to correct paragraph 12 of the Complaint in light of Plaintiff's testimony and pursuant to Fed. R. Civ. P. 11(b).  To date, Plaintiff has refused.

The true facts—as revealed in deposition—deprive Plaintiff of statutory standing to assert his claims.  First, as noted by Judge Spaulding, some courts have determined that a plaintiff has statutory standing under the TCPA if the plaintiff is the "called party."  *Haight*, 15 U.S. Dist. LEXIS 107010, at *12 n. 4.  The U.S. Court of Appeals for the Eleventh Circuit has defined "called party" as the subscriber.  *See Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1252 (11th Cir. 2014).  In this case, the subscriber was Mr. Charles, not Plaintiff.  *See* Statement of Material Facts ¶¶ 1-2, 14.  Therefore, using the "called party" benchmark of TCPA standing, Plaintiff's claim fails.

Second, some courts have held that a plaintiff has standing under the TCPA if the plaintiff was the "intended recipient of the call."  *Haight*, 15 U.S. Dist. LEXIS 107010, at *12 n. 4.  The intended recipient of the calls at issue here was Mr. Everett, not Plaintiff.  *See* Statement of Material Facts ¶ 28.  Thus, using the "intended recipient" benchmark of TCPA standing, Plaintiff's claim still fails.

Third, some courts have held that a plaintiff has standing under the TCPA if the plaintiff was "the regular user and carrier of the phone and received the calls at issue."  *Haight*, 2015 U.S. Dist. LEXIS 107010, at *12 n. 4.  Under this approach, "[i]n most instances when the subscriber is an individual, he or she will be the primary user of the telephone and the recipient of the prohibited calls."  *Cellco P'ship v. Plaza Resorts Inc.*, No. 12-cv-81239, 2013 U.S. Dist. LEXIS 139337, at *13 (S.D. Fla. Sept. 27, 2013).  At times, however, the subscriber may "transfer primary use of the telephone to another."  *Id*.

For example, in *Breslow v. Wells Fargo Bank, N.A.*, the U.S. Court of Appeals for the Eleventh Circuit noted that the "primary user" of a cellular phone was the subscriber's minor

child.  *Breslow v. Wells Fargo Bank, N.A.*, 755 F.3d 1265, 1266 (11th Cir. 2014).  The Court deemed the subscriber's minor child to be the primary user because "the cell phone was used *exclusively* by [the subscriber's] minor child."  *Id.* (emphasis added).  As further explained in the District Court's opinion in the *Breslow* case: "Record statements by the Plaintiffs indicate that only R.B., a minor, and not Breslow, had exclusive access to or used the Cell Number."  *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp.2d 1316, 1316 (S.D. Fla. 2012).

In this case, by the *Breslow* standard, Plaintiff was not even close to being the primary user of the Phone.  As previously explained, Plaintiff was not the subscriber of the Phone.  *See* Statement of Material Facts ¶¶ 1-2, 14.  He did not have exclusive use of the Phone.  *Id.* ¶¶ 9-13.  His girlfriend, Ms. Charles, could, and did, take the Phone as needed.  *Id.* ¶ 10. There was no schedule of fixed times when Plaintiff was entitled to sole use of the Phone. *Id.* ¶ 11.  When Plaintiff did have possession of the Phone, people often would call to speak with Ms. Charles.  *Id.* ¶ 12.  Plaintiff did not know who was using the Phone when it was not in his possession.  *Id.* ¶ 13.  Plaintiff did not even know the Phone's PIN number and cannot make changes on the Account.  *Id.* ¶¶ 5-6.  Thus, under the "primary user" theory of TCPA standing, Plaintiff lacks standing.  As such Ally is entitled to summary judgment.

## C.  Plaintiff Lacks Article III Standing

### 1.  Plaintiff Must Suffer a "Real" and "Concrete" Injury to Assert a Claim

In *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016) ("*Spokeo*"), as revised (May 24, 2016), the United States Supreme Court held definitively that Congress cannot "erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing."  *Id.* at 1548.  Most importantly for this case, it was observed that a

plaintiff does not "automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id*. at 1549.  Instead, "Article III standing requires a concrete injury even in the context of a statutory violation." *Id*.  And certainly some statutory violations simply do not cause any real world harm.  *Id*. at 1550 (noting the example of an errant zip code on a consumer credit report does not give rise to any "concrete" harm).  Accordingly, it is insufficient for the Plaintiff in this case to merely allege that she received "illegal" calls—she must demonstrate that some concrete "real world" harm was suffered as a result.  *See id*.

To establish the necessary Article III standing, Plaintiff bears the burden of demonstrating the following three elements: (1) an injury in fact; (2) a causal connection between the injury and the challenged action; and (3) a likelihood that a favorable decision will redress the injury.  *Jordan v. Sosa*, 654 F. 3d 1012, 1019 (10th Cir. 2011).  Importantly, to be "concrete" after *Spokeo*, the "injury in fact" must—as the name implies—result in actual harm that exists "in fact."  *Spokeo*, 136 S. Ct. at 1550.  The harm must be "real," and not "abstract." *Id.* at 1548.  And the concreteness inquiry must be treated separately as it "is quite different from particularization."  *Id.* at 1543.

## 2. The Court Must Dismiss Plaintiff's TCPA Claim As to All Calls For Which Plaintiff Cannot Show He Suffered Harm

It is Plaintiff's burden to demonstrate he possesses standing to assert his claims, not Ally's burden to demonstrate that he lacks it.  *Jordan v. Sosa*, 654 F. 3d at 1019.

Importantly, "a plaintiff must establish standing for each separate claim asserted." *MJ Entertainment Enterprises, Inc. v. City of Mount Vernon*, 234 F. Supp. 2d 306, 311 (S.D.N.Y. Nov. 21, 2002), citing *Bowen v. First Family Financial Servs., Inc*., 233 F.3d 1331, 1339

(11th Cir. 2000); *Comer v. Cisneros*, 37 F.3d 775, 788 (2d Cir.1994); 13 *Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure* § 3531 (2d ed. Supp. 2002) ("A party with standing to advance one claim may lack standing to advance other claims.").

Each separate violation of a statute giving rise to a cause of action is generally considered a "separate claim," which is independently actionable. *See, e.g.*, *Knight v. Columbus, Ga.*, 19 F. 3d 579, 582 (11th Cir. 1994) (each violation of a statute gives rise to a new cause of action); *Romero v. Dep't Stores Ntl. Bank, No.* 15-CV-193, 2016 U.S. Dist. LEXIS 110889, at *3 (S.D. Cal. August 5, 2016) (TCPA standing cannot be dispensed "in gross"); *Telephone Science Corporation v. Asset Recovery Solutions, LLC,* No. 15 C 5182, 2016 WL 47916, * 4 (N.D. Ill. Jan. 5, 2016) (TCPA Plaintiff cannot "bootstrap" standing to assert claims that did not cause harm); *Holtzman v. Turza*, No. 08 C 2014, 2010 WL 4177150, at *5 (N.D. Ill. Oct. 19, 2010) ("[E]ach instance of a violation [of the TCPA] is independently actionable.")   Courts commonly treat each call violating the TCPA as a separately enforceable claim giving rise to a separate damage award.  *See, e.g.*, *Tel. Sci. Corp. v. Hilton Grand Vacations Co., LLC*, No. 615CV969ORL41DAB, 2015 WL 7444409, at *2 (M.D. Fla. Nov. 20, 2015) (recognizing that standing to challenge one subset of calls "say[s] nothing about whether standing exists to challenge [other] calls").   And this Court too has recognized that standing to assert some category of calls does not necessarily afford standing to sue for other calls.  *See* Order Denying Motion to Dismiss (Doc. No. 58) at p. 10 (holding that calls "received" in violation of the TCPA may have caused Article III harm but reserving the issue of whether plaintiff was harmed by calls he "did not receive or notice").

### 3. Plaintiff Cannot Show that Calls He Did Not "Receive" and/or That he Was Unaware of Actually Caused Him Harm

While Ally disagrees with the Court's earlier ruling that all calls Plaintiff actually "received" from Ally necessarily caused him Article III harm—and reserves that issue for appeal—it does not seek to re-litigate that issue on this motion. *See* Doc. 58, pp 6-10. Rather, Ally addresses this motion to the issue reserved by the Court in its earlier ruling addressing *Spokeo,* to wit: whether Plaintiff suffered harm from calls he did not actually receive and/or was not aware of. Surely, however, such calls could not possibly have caused harm. *Romero*, 2016 U.S. Dist. LEXIS 110889, *4-5 (S.D.Cal. Aug. 5, 2016) (finding no harm possible from calls that Plaintiff was not even aware of).

### a. Plaintiff was not Economically Impacted by Any Call at Issue

At the outset, it is important that Plaintiff was not charged for any of the calls Ally attempted to make in this case. *See* Statement of Material Facts ¶¶ 12, 32. Some courts have held that fact alone to be dispositive of a TCPA case involving calls to cell phones. *See Stavrinides v. Pac. Gas & Elec. Co.*, No. C 16-00433 WHA, 2016 WL 1598744, at *2 (N.D. Cal. Apr. 21, 2016) (motion to dismiss granted, in part, because "plaintiff has not alleged that she was charged for the call, which she must allege to state a claim under the TCPA").[3] Although the Eleventh Circuit has held that a party need not be charged for a call to have *statutory* standing to assert a TCPA claim, the loss of an economic hook severely undercuts Plaintiff's claim that he suffered a "real world" harm for the majority of his calls.

---

[3] This is not surprising as the FCC long ago ruled that "[b]ased on the plain language of Section 227(b)(1)(iii), we conclude that the TCPA did not intend to prohibit autodialer or prerecorded message calls to cellular customers for which the called party is not charged." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 7 FCC Rcd. 8752, 8773, ¶ 45 (1992) ("1992 TCPA Order").

### b. Calls Made to the Phone While Plaintiff Was Not Using it Could Not Have Harmed Plaintiff

The alleged calls at issue in this case took place during a narrow timeframe from approximately December, 2015 to March, 2016.  *See* Statement of Material Facts ¶ 27.  As shown above, Plaintiff did not use the Phone exclusively during this timeframe and cannot recall which timeframes his girlfriend was in possession of the phone. *Id.* at ¶¶ 8-13, 15-17. Plaintiff obviously does not have standing to recover for calls placed to the Phone at times when he was neither paying for the phone nor using it.  *See, e.g., Horowitz v. GV Servs. Ltd., P'ship*, No. 14-cv-2512, 2016 U.S. Dist. LEXIS 172359, at *24 (S.D. Cal. Dec. 12, 2016) ("Plaintiff Hamby cannot be said to have suffered an injury as contemplated by the TCPA because Plaintiff Hamby did not receive the offending voicemail, nor was Plaintiff Hamby financially responsible for the plan governing the 9515 number.").  Ally is entitled to judgment on any calls attempted to the Phone when Plaintiff was not in possession of it.  *Id.*

### c. Calls that Were Blocked by the "Block It" Application Could Not Have Harmed Plaintiff

According to its advertisements, calls blocked by the "Block It" application are "immediately disconnected" with no opportunity for the caller to leave a voicemail.  *See* Statement of Material Facts ¶ 22.  Plaintiff began blocking Ally's calls on January 30, 2016. *See id.* ¶ 21.  Conclusively, therefore, Plaintiff cannot have suffered harm as the result of any calls placed after that date—these calls could not have tied up Plaintiff's phone line or otherwise have caused harm. *See, e.g., Juarez v. Citibank, N.A.*, No. 16-cv-01984-WHO, 2016 U.S. Dist. LEXIS 118483, at *7 (N.D. Cal. Sep. 1, 2016) (observing that "…calls made

to a neglected phone that go unnoticed or calls that are dropped before they connect may violate the TCPA but not cause any concrete injury.").

Further, First Orion's Rule 30(b)(6) deponent, Matt Rateliff, testified that the Metro Block It application is designed to block calls added to the user's block list by immediately disconnecting incoming calls from the blocked number. *See* Statement of Material Facts ¶ 23. In fact, First Orion received data from the Phone confirming that at least 7 calls from Ally to the Phone were successfully blocked by the Block It application. *See id.* at ¶ 24, 25. Any other calls from Ally not reflected in Block It's call blocking history did not require blocking because the Phone was either turned off or out of service. *Id.* at ¶ 26. Therefore, after January 30, 2016, Plaintiff could not have been harmed by any calls from Ally because they were either blocked by the Block It application, the Phone was off, or the Phone was out of service.

As such Ally is entitled to partial summary judgment on all elements of Plaintiff's claim related to phone calls placed after January 30, 2016.

### d. Other Calls Plaintiff Does Not Recall Receiving Could not have Caused Harm Either

In *Romero v. Dep't Stores Nat'l Bank*, No. 15-cv-193, 2016 U.S. Dist. LEXIS 110889 (S.D.Cal. Aug. 5, 2016), the Court applied *Spokeo* to a TCPA case by dividing the calls at issue into the three distinct categories. The first category consisted of calls that the plaintiff did not hear. The Court held that the plaintiff did not have Article III standing with respect to these calls, because the plaintiff was not "aware of the call when it occurred." *Id*. at *13.

The second category constituted calls that the plaintiff heard but did not answer. Again, the Court held that the plaintiff did not have Article III standing with respect to these

calls, because "[n]o reasonable juror could find that one unanswered telephone call could cause lost time, aggravation, distress, or any injury sufficient to establish standing." *Romero*, 2016 U.S. Dist. LEXIS 110889, at \*14.  After all, "[w]hen someone owns a cell phone and leaves the ringer on, they necessarily expect the phone to ring occasionally." *Id*.

The third cateogry consisted of calls that the plaintiff answered.  The *Romero* Court held that the plaintif did not have Article III standing with respect to these calls because there was no evidence that the defendants' use of an auto-dailing system caused the plaintiff "greater lost time, aggravation, and distress than she would have suffered had the calls she answered been dialed manually, which would not have violated the TCPA." *Romero*, 2016 U.S. Dist. LEXIS 110889, at \*15.

While the Court has parted ways with *Romero* with respect to the third category of calls, it should follow *Romero* with respect to the first and second category. *Spokeo* requires that tangible harm be "real" for Article III purposes. *Spokeo, Inc.*, 136 S. Ct. at 1548. An injury in fact must cause a concrete *de facto* harm. *Id.* But what *de facto* harm can be caused from a call that a consumer was never even aware of at the time it was placed?

In its earlier Order denying Ally's Motion to Dismiss, the Court focused on the related tort of intrusion upon seclusion, which is a recognized tort in Florida. *See* Doc. 58, pp 6-10.  The Court correctly identified, therefore, that in exalting misplaced calls to cell phones to actionable status, Congress did not re-write the common law rights of privacy in Florida or elsewhere. *See Spokeo, Inc.*, 136 S. Ct. at 1549 (Congress' role in elevating harms does not mean that it creates injuries in fact).   Rather it simply allowed an injury previously recognized under existing tort law standards to find a new statutory remedy.  Thus, calls that

do not invade privacy under existing tort regimes still do not cause actual "harm"; they merely violate the procedural requirements of a prophylactic statute.

Notably, however, only "atrocious" invasions of privacy are actionable in Florida. *See Watts v. City of Hollywood*, 146 F. Supp.3d 1254, 1268 (S.D. Fla. 2015) (A plaintiff must meet "an onerous standard." Indeed, a plaintiff's "subjective reaction, however distraught she may have been, does not control the analysis; rather, she must demonstrate, as a matter of law, and 'as objectively as is possible, [that the alleged misconduct] is 'atrocious, and utterly intolerable in a civilized community.'"). The rationale is that the right to privacy in modern society is not a complete right, it is subject to various and reasonable intrusions. *See, e.g., Kent v. Harrison*, 467 So.2d 1114, 1114-15 (Fla. Dist. Ct. App. 1985) (holding that defendant's deliberate, methodical, and incessant harassing telephone calls over a period of several months made to the plaintiff, while offensive and insulting and intentionally designed and undertaken to distress and annoy the plaintiff an to disturb the peacefulness and tranquility of his home, did not rise to the level of extreme and outrageous).

Further, much turns on the circumstances surrounding where and how calls are received. The residence has traditionally been considered a place of sanctuary and seclusion. *See, e.g., Kyllo v. United States*, 121 S. Ct. 2038, 2046 (2001) (noting in the context of governmental intrusion there is "a firm line at the entrance of the house"). Those same privacy concerns do not prevail on a busy sidewalk or street corner, however. *See, e.g., Rowan v. U.S. Post Office Dep't, 3*97 U.S. 728, 738, 90 S. Ct. 1484, 1491, 25 L. Ed. 2d 736 (1970) ("we are often 'captives' outside the sanctuary of the home and subject to objectionable speech and other sound…"); *Pub. Utils. Comm'n v. Pollak*, 343 U.S. 451, 468

(1952) ("One who is in a public vehicle may not of course complain of the noise of the crowd and the babble of tongues. One who enters any public place sacrifices some of his privacy.") (Douglas, J., dissenting).  And even within our homes, a certain level of noise is to be expected.  Birds chirp, dogs bark and newborns cry.  Unexpected visitors wrap upon our door and unexpected callers may ring us on the phone, especially if we just obtained a new cell phone number.  This is all part of life, modern or otherwise. *See Romero*, 2016 U.S. Dist. LEXIS 110889, *14 ("[w]hen someone owns a cell phone and leaves the ringer on, they necessarily expect the phone to ring occasionally.").

Distilling the law of privacy to a single sentence—no one is entitled to perfect seclusion, not even in one's own home and certainly not outside of it. Not surprisingly, therefore, the purpose of the TCPA was to prevent *actual* interruptions of a person's activities or resulting *actual* damage to a person's mental state. See 137 Cong. Rec. 30821-30822 (1991) (TCPA sponsor noting his goal to prevent computerized calls that have real-life impact: those that "wake us up in the morning; [] interrupt our dinner at night; [] force the sick and elderly out of bed; [] hound us until we want to rip the telephone right out of the wall"). But calls that a person is unaware of do not interrupt anything, do not drag anyone out of bed and do not break anyone's concentration, much less "atrociously" intrude upon their seclusion.  So they are not actionable under *any* body of law. *See, e.g., Rush v. Portfolio Recovery Assocs. LLC*, 977 F. Supp. 2d 414, 435 (D.N.J. 2013) (plaintiff's testimony that the appearance of unanswered calls on her call log caused her "irritation" and "annoyance" was insufficient to support invasion of privacy claims because only "outrageous, rather than annoying or upsetting, conduct" is actionable).

Nor do such calls cause any element of property damage. As shown above, Plaintiff was not charged for the calls and the Phone was not harmed by the calls. *See, e.g., Nelson v. Ashford Univ., LLC*, No. 16-cv-3491, 2016 U.S. Dist. LEXIS 116189, at *7 (N.D. Ill. Aug. 29, 2016) ("Plaintiff does not allege that the calls resulted in any monetary cost that would not have otherwise occurred, such as overage charges for telephone or data services."). And Plaintiff was not deprived of an ounce of the Phone's functionalities—even momentarily—as cell phones are capable of handling multiple calls at a time and Plaintiff concedes that this phone had call waiting anyway. *See* Statement of Material Facts ¶ 31. Nor is the comparison to a trespass an apt fit. Property is owned to be peacefully and exclusively enjoyed. Telephone numbers are owned to make ourselves available to be contacted by another. While stepping foot on a person's property might invade their right to exclusive enjoyment, calling a person's phone number does not. That's the purpose of a phone number. *See Romero*, 2016 U.S. Dist. LEXIS 110889, *14. And yes, invading a person's phone electronically to — for instance — access files stored on the phone is a trespass to chattel; but calling a person without permission is no different than saying "hello" to a stranger passing on the street (absent some resulting damage to their economic or privacy interests).

In short, nothing in law or logic suggests that a person can be harmed by a call he never even aware of—either because it was unheard, the phone was off, the ringer was off, the call was blocked by an application, etc. *Juarez*, No. 16-cv-01984-WHO, 2016 U.S. Dist. LEXIS 118483, at *7 ("calls made to a neglected phone that go unnoticed or calls that are dropped before they connect may violate the TCPA but not cause any concrete injury.").

As such, Ally is entitled to summary judgment on all elements of Plaintiff's claim he cannot demonstrate relate to "received" calls.

## IV.  CONCLUSION

For the reasons set forth above, the Court should grant Ally's motion for summary judgment, along with such further relief as the Court deems just and proper.

**REQUEST FOR ORAL ARGUMENT PURSUANT TO LOCAL RULE 3.01(j)**

Pursuant to Local Rule 3.01(j), Ally requests oral argument regarding this Motion. Ally estimates the time required for argument will not exceed one hour.

Respectfully submitted this 17th day of January, 2017.

> */s/ Scott D. Goldsmith*
> Eric J. Troutman, Trial Counsel (PHV)
> Scott D. Goldsmith (PHV)
> Divya S. Gupta (PHV)
> Alexandra N. Krasovec (PHV)
> DORSEY & WHITNEY LLP
> 600 Anton Boulevard, Suite 2000
> Costa Mesa, California 92626-7655
> Telephone: (714) 800-1400
> Facsimile: (714) 800-1499
> troutman.eric@dorsey.com
> goldsmith.scott@dorsey.com
> gupta.divya@dorsey.com
> krasovec.alexandra@dorsey.com
>
> R. Frank Springfield (FL Bar # 0010871)
> Jacqueline Simms-Petredis (FL Bar # 0906751)
> BURR & FORMAN LLP
> 201 North Franklin Street, Suite 3200
> Tampa, Florida 33602
> Telephone: (813) 221-2626
> Facsimile: (813) 357-3534
> fspringfield@burr.com

jsimms-petredis@burr.com

Attorneys for Defendant
ALLY FINANCIAL INC.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing has been served on the following counsel of record by Notice of Electronic Filing, or, if the party served does not participate in Notice of Electronic Filing, by U.S. First Class Mail, hand delivery, facsimile, or e-mail on this the 17th day of January, 2017:

William Peerce Howard, Esq.
Amanda J. Allen, Esq.
The Consumer Protection Firm
210-A South MacDill Avenue
Tampa, Florida 33609
Billy@TheConsumerProtectionFirm.com
Amanda@TheConsumerProtectionFirm.com
Nancy@TheConsumerProtectionFirm.com

Timothy J. Sostrin, Esq.
Keogh Law, LTD
Suite 3390
55 W. Monroe St.
Chicago, Illinois 60603
TSostrin@Keoghlaw.com
MSeckel@Keoghlaw.com

*/s/ Scott D. Goldsmith*_____