UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

DONELL L. TILLMAN, individually
and on behalf of all others similarly
situated

        Plaintiff,

v.                              Case No:  2:16-cv-313-FtM-99CM

ALLY FINANCIAL INC.,

        Defendant.

_____

## ORDER

This matter comes before the Court upon review of Defendant's Motion for a Protective Order (Doc. 104); Plaintiff's Renewed Motion to Compel Defendant's Production of Discovery (Doc. 107); and Plaintiff's Time Sensitive Motion for Extension of Time for Plaintiff to File Motion for Class Certification (Doc. 111). Defendant opposes Plaintiff's renewed motion to compel and motion for extension of time, and Plaintiff opposes Defendant's motion for a protective order.  Docs. 114, 116, 125.

### I.     Background

On April 28, 2016, Plaintiff filed this lawsuit against Defendant on the ground that Defendant has violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq*.  Doc. 1 at 1.  Defendant allegedly is one of the largest automotive financiers in the world.  *Id.* ¶ 4.  Plaintiff seeks to bring claims on behalf

of a class that consists of people who received non-consented calls from Defendant within four years of the filing of the Complaint.   *Id.* ¶¶ 38-39.

Plaintiff claims that in or around December 2015, Defendant called him numerous times to reach an individual named Phillip Everett.   *Id.* ¶ 9.   Plaintiff notified Defendant that he is not Phillip Everett, and requested Defendant to cease further calls to him.   *Id.* ¶ 10.   Plaintiff asserts that he is not the person whom Defendant attempted to reach, and has not provided his consent to receive calls from Defendant for any purpose.   *Id.* ¶¶ 17-18.   Defendant, however, continued to call Plaintiff from January to March 2016.   *Id.* ¶ 11.   Several of Defendant's calls were artificial and pre-recorded voice messages.   *Id.* ¶ 14.

Plaintiff proposes one class and two sub-classes defined as:

(1) All persons in the United States (2) to whose cellular telephone number (3) Ally made a non-emergency telephone call (4) using the same dialing system(s) used to call Plaintiff or an artificial or prerecorded voice (5) within 4 years of the complaint (6) where Ally did not have express consent to call said cellular telephone number.

### Sub-Class A
(1) All persons in the United States (2) to whose cellular telephone number (3) Ally made a non-emergency telephone call (4) using the same dialing system(s) used to call Plaintiff or an artificial or prerecorded voice (5) within 4 years of the complaint (6) who was not the person alleged to owe the debt in question.

### Sub-Class B
(1) All persons in the United States (2) to whose cellular telephone number (3) Ally made a non-emergency telephone call (4) using the same dialing system(s) used to call Plaintiff or an artificial or prerecorded voice (5) within 4 years of the complaint (6) after that person had instructed Ally to cease calls to that number.

*Id.* ¶ 39.

On October 18, 2016, the Court entered a Case Management and Scheduling Order ("CMSO") setting the deadline for disclosure of expert reports for Plaintiff to August 18, 2017 and for Defendant to September 18, 2017, the discovery deadline to October 20, 2017, and a trial term of May 7, 2018. Doc. 54. On October 18, 2016, the Court granted in part and denied in part Defendant's motion to stay and stayed discovery until December 2, 2016 in order to allow sufficient time for the resolution of Defendant's motion to dismiss (Doc. 29). Doc. 55. The Court also extended Plaintiff's deadline to file a motion for class certification to January 12, 2017. *Id.* at 7. On October 4, 2016, Plaintiff filed a Motion to Compel Defendant's Production of Discovery (Doc. 47), which the Court stayed pending judicial resolution of Defendant's motion to dismiss. Doc. 55.

On November 30, 2016, Senior United States District Judge John E. Steele denied Defendant's motion to dismiss (Doc. 29). Doc. 58. Judge Steele found that Plaintiff has standing to proceed based upon the allegations in his Complaint. *Id.* at 10. Judge Steele held, however, that Plaintiff's proposed class and sub-classes appear "fail-safe."[1] *Id.* at 12. Judge Steele stated that he would address at the class-certification stage whether a fail-safe class is permissible because the Eleventh Circuit has not yet addressed whether a fail-safe class can be certified. *Id.* at 12-13.

---

[1] Judge Steele explained that a "fail-safe" class is "one whose definition incorporates the elements of a successful legal claim, such that determining whether an individual or entity is a member of the class 'front-ends a merits determination on the defendant's liability.'" *Id.* at 10-11 (alteration in original).

On January 4, 2016, Plaintiff filed a motion to extend the deadline to move for class certification.  Doc. 71.  On January 6, 2017, the Court issued an Order granting in part and denying in part Plaintiff's motion to compel (the "Discovery Order") and ordered Plaintiff to serve amended discovery requests seeking evidence necessary for class certification under Rule 23.   Doc. 72 at 16.   The Court found that although Plaintiff's discovery requests are overly broad and impose a heavy burden on Defendant, Plaintiff needs evidence necessary for class certification under Rule 23.   *Id.* at 13.   Because both parties raised the technical issues surrounding extracting the requested data from Defendant's system, the Court also ordered the parties' experts to meet and confer over the technical disputes and the parties to meet and confer over how to conduct discovery efficiently and economically.   *Id.* at 13-14.

## II.   Defendant's motion for a protective order (Doc. 104) and Plaintiff's renewed motion to compel (Doc. 107)

Defendant states that after the Court issued the Discovery Order, the parties' counsel met telephonically in compliance with the Discovery Order.   Doc. 104 at 7.  Defendant asserts that although Defendant's counsel inquired why Plaintiff needs so much data to certify a class, Plaintiff simply requested a six-month sample of the same data his previous discovery requests sought.   *Id.*   Defendant claims that on January 13, 2017, Plaintiff served revised discovery requests seeking Defendant's data that are unnecessary for certifying a class.   *Id.*   Specifically, Defendant disputes the following discovery requests:

**AMENDED INTERROGATORY NO. 4:**
Identify each instance in which a telephone number appears with a Wrong Number Notation in the Note field in SHAW from November 1,

2015 through April 30, 2016, including the Activity Date and Time, Activity Code, Activity Type, telephone number and exact Wrong Number Notation appearing in the Note field, List Info, and Collector Info.

**AMENDED INTERROGATORY NO. 6:**
Identify each instance in which a telephone number appears with a Do Not Call Notation in the Note field in SHAW from November 1, 2015 through April 30, 2016, including the Activity Date and Time, Activity Code, Activity Type, telephone number and exact Do Not Call Notation appearing in the Note field, List Info, and Collector Info.

**AMENDED REQUEST FOR PRODUCTION NO. 2:**
Please produce in CSV format the data existing within SHAW concerning each Outbound Dialer Call made from November 1, 2015 through April 30, 2016 to any of the telephone numbers responsive to interrogatory #4 or #6, including the Activity Date and Time, Activity Code, Activity Type, the telephone number and Disposition Information appearing in the Note field, List Info, and Collector Info.

*Id.* at 7-8; Doc. 104-4 at 3-4, 7-8, 17.   In addition, Defendant argues that when the parties' experts met pursuant to the Discovery Order, Plaintiff's expert suggested that Plaintiff needs only two columns of data, although demands six columns of data. Doc. 104 at 8.

On February 13, 2017, Defendant served objections to Amended Interrogatories Nos. 4 and 6, arguing that the discovery requests are overly broad and impose an undue burden given the needs of this case.   Doc. 104-4 at 5, 9. Defendant first responded that the discovery requests seek information not necessary for class certification.   *Id.*   Defendant stated, however, that it is willing to identify how many times the notation "wrong #" appears in its records during the specified time period.   *Id.* at 5.   Defendant also argued that extracting and compiling the data requested by Plaintiff imposes an undue burden, forcing Defendant to expend a

great amount of resources and time.  *Id.* at 7, 11.   Hence, Defendant asserted that producing the requested data would impede Defendant's ordinary course of business, delay projects, and substantially hinder the processing speed and capacity of its computer network.   *Id.*   Furthermore, Defendant claimed that the discovery requests seek every instance the words "wrong number" and "do not call" appear in Defendant's notes, making the requests overly and underly inclusive.   *Id.* at 8, 12. Defendant objected to Plaintiff's Amended Request for Production No. 2 on similar grounds.   *Id.* at 17-19.

In its present motion, Defendant argues that Plaintiff's proposed class is not identifiable.   Doc. 104 at 12.   Defendant also asserts that Defendant does not have information regarding the ownership of phone numbers.   *Id.*   Defendant contends that although there are a number of easier and less expensive ways to investigate Plaintiff's theory of ascertainability related to his proposed class, Plaintiff chose to seek Defendant's data, which are not necessary to address ascertainability concerns. *Id.* at 13-14.   Furthermore, Defendant argues that Defendant's data sought by the discovery requests do not help establish commonality between putative class members, adequacy, and numerosity.   *Id.* at 14-20.

In addition, Defendant contends that when Defendant asked Plaintiff why he needs so much data from Defendant, Plaintiff identified two points: (1) Plaintiff could subpoena wireless carriers to obtain the name of the subscribers associated with the relevant phone numbers; and (2) the parties could extract data when needed to send class notice.   *Id.* at 9.   Defendant argues that it suggested stipulating to both points

in order to resolve the ongoing disputes.  *Id.*  Defendant asserts, however, that when it sent a proposed stipulation to Plaintiff, Plaintiff did not accept the proposed stipulation.  *Id.*  Defendant claims that it is willing to enter into its proposed stipulation as a condition of the protective order, if the Court grants its motion for a protective order.  *Id.* at 20.

Plaintiff responds that Defendant's present motion is a motion to reconsider the Discovery Order in disguise.  Doc. 116 at 1.  Plaintiff contends that despite the Discovery Order instructing Defendant to produce at least data within its technical reach, Defendant refused to produce any data whatsoever related to Plaintiff's proposed class.  *Id.*  Plaintiff argues that pursuant to the Discovery Order, the parties' experts met on January 19, 2017, during which Defendant's experts did not argue that the requested data is beyond Defendant's technical reach.  *Id.* at 5. Instead, Plaintiff asserts that Defendant agreed to export a copy of its data fields at issue from its SHAW system into a stand-alone database in order to minimize the disruption of Defendant's business operations.  *Id.*  Nonetheless, Plaintiff claims that Defendant refused to produce any of the requested data.  *Id.*  In addition, Plaintiff argues that Defendant's proposed stipulation only establishes that a proposed class has more than 100 members and that Defendant does not deny Plaintiff's ability to obtain the names of telephone account holders.  *Id.* at 6. Plaintiff asserts that he needs the requested data in order to satisfy the requirements of Rule 23.  *Id.* at 10-11.

Plaintiff's renewed motion to compel incorporates its response in opposition to Defendant's motion for a protective order.  Doc. 117.  Furthermore, Plaintiff contends that he narrowed his discovery requests to a time period of six months to minimize any burden on Defendant.  *Id.* at 10.  Plaintiff also argues that he reduced Defendant's burden further by focusing on data from Defendant's SHAW system instead of the CARS system that Defendant contended was a compressed, non-relational database.  *Id.* at 14.  Furthermore, Plaintiff asserts that exporting data from Defendant's SHAW system will not impede Defendant's operation of business because the data can be exported into a stand-alone database and Plaintiff has two other ways to reduce Defendant's burden of searching the data.  *Id.*  In addition, Plaintiff asserts that the requested data are relevant to establishing the factors under Rule 23.  *Id.* at 10.

Defendant's response in opposition contends that it is "impossible" to compile a comprehensive log of all numbers dialed by Defendant during the specified time period without expending millions of hours of work.  Doc. 125 at 3.  Defendant claims that responding to Amended Interrogatories Nos. 4 and 6 will take approximately 180-260 hours of work, and responding to Amended Request for Production No. 2 will take approximately 200 hours of work.  *Id.* at 15.  Defendant also estimates that a search through its database during the specified time period of six months will yield 171,000,000 records regarding millions of accounts.  *Id.* at 17. Furthermore, Defendant argues that Plaintiff does not need the requested data in order to establish the factors under Rule 23.  *Id.* at 5-8.  Regardless, Defendant

asserts that the requested data does not match the contours of the class definition.
*Id.* at 16. Defendant also claims that it produced "everything Plaintiff needs to seek
certification in this case," such as exemplars of the tables housing the data relevant
to Plaintiff. *Id.* at 1. As a result, Defendant contends that the discovery requests
are overly broad and burdensome. *Id.* at 18-19.

> Rule 26(b)(1) permits discovery
>
> regarding any nonprivileged matter that is relevant to any party's claim
> or defense and proportional to the needs of the case, considering the
> importance of the issues at stake in the action, the amount in
> controversy, the parties' relative access to relevant information, the
> parties' resources, the importance of the discovery, in resolving the
> issues, and whether the burden or expense of the proposed discovery
> outweighs its likely benefit. Information within this scope of discovery
> need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). In addition to Rule 26(b)(1), Rule 26(b)(2) imposes specific
limitations on electronically stored information. Under Rule 26(b)(2),

> A party need not provide discovery of electronically stored information
> from sources that the party identifies as not reasonably accessible
> because of undue burden or cost. On motion to compel discovery or for a
> protective order, the party from whom discovery is sought must show
> that the information is not reasonably accessible because of undue
> burden or cost. If that showing is made, the court may nonetheless order
> discovery from such sources if the requesting party shows good cause,
> considering the limitations of Rule 26(b)(2)(C). The court may specify
> conditions for the discovery.

Fed. R. Civ. P. 26(b)(2).

With regard to protective orders, Rule 26(c) provides that "a party or any
person" may move for a protective order to protect a person from "annoyance,
embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c).
The court, upon showing of good cause, may issue a protective order including

"specifying terms, including time and place or the allocation of expenses, for the disclosure or discovery" and "forbidding the disclosure or discovery."   Fed. R. Civ. P. 26(c).   "Rule 26(c) gives the district court discretionary power to fashion a protective order."   *Farnsworth v. Procter & Gamble, Co.*, 758 F.2d 1545, 1548 (11th Cir. 1985).

The Court finds that the scope of Amended Interrogatories Nos. 4 and 6 and Amended Request for Production No. 2 are not proportional to the needs of this case at this stage of the litigation, considering the importance of the issues at stake in this action and the parties' relative access to relevant information.   Fed. R. Civ. P. 26(b)(1).   Here, as Defendant correctly points out, it is uncertain at this stage whether Plaintiff's proposed class and sub-classes even are certifiable because Judge Steele found that Plaintiff's proposed class and sub-classes are "fail-safe," noting that whether a fail-safe class is permissible is not clear.   Docs. 58 at 10-12; 104 at 12.   If Judge Steele finds that Plaintiff's proposed class and sub-classes are impermissible, he still may choose to revise or permit Plaintiff to cure the flawed definitions. *Alhassid v. Bank of America, N.A.*, 307 F.R.D. 684, 694 (S.D. Fla. 2015).   As a result, it is not certain at this stage whether Plaintiff's definitions of proposed class and sub-classes will survive beyond the class-certification stage.

Furthermore, as Defendant also points out, it is unclear at this stage whether Plaintiff's proposed class and sub-classes meet the ascertainability requirement under Rule 23.   Doc. 104 at 12-13.   Plaintiff as a party moving for class certification carries a burden of proof: to establish the propriety of class certification under Rule 23, including ascertainability.   *Busby v. JRHBW Realty, Inc.,* 513 F.3d 1314, 1322

(11th Cir. 2008); *Karhu v. Vital Pharm., Inc.*, 621 F. App'x 945, 948 (11th Cir. 2015). The Eleventh Circuit ruled that a class is ascertainable if "the class definition contains objective criteria that allow for class members to be identified in an administratively feasible way." *Karhu*, 621 F. App'x at 946. "Identifying class members is administratively feasible when it is a 'manageable process that does not require much, if any, individual inquiry.'" *Id.* Here, although Defendant disputes that Plaintiff's proposed definitions of classes do not contain objective criteria to identify putative class members' consent to receive Defendant's calls, Judge Steele has not resolved this issue. *See id.*; Doc. 104 at 13. As a result, the Court finds that it is yet uncertain whether Plaintiff's definitions of proposed classes meet the ascertainability requirement under Rule 23. Docs. 58 at 12-13; 104 at 12-13.

In comparison, Defendant argues that the requested data is not reasonably accessible because of undue burden and cost. Doc. 125 at 15; Fed. R. Civ. P. 26(b)(2). It estimates that it needs 180-260 hours of work to respond to Amended Interrogatories Nos. 4 and 6 and another 200 hours of work to respond to Amended Request for Production No. 2. Doc. 125 at 15. Defendant also claims that housing the extracted data in a secure environment will cost Defendant at least $5,000 per month. *Id.* When Plaintiff's proposed definitions of class and sub-classes are open to alternation or denial by Judge Steele's future ruling, the Court will not compel discovery that will impose such a heavy burden of production on Defendant. Doc. 58 at 12-13. As a result, the Court will grant Defendant's motion for a protective order (Doc. 104), deny Plaintiff's renewed motion to compel (Doc. 117), and direct Defendant

to enter into a proposed stipulation (Doc. 104-6).   If Judge Steele rules that a fail-safe class is certifiable and also approves of Plaintiff's proposed definitions of class and sub-classes, but finds that Plaintiff's evidentiary showing is insufficient, Plaintiff may ask the Court to revisit this ruling and serve amended discovery requests targeting his evidentiary burden to meet other requirements of Rule 23 for class certification.

### III.   Plaintiff's Time Sensitive Motion for Extension of Time for Plaintiff to File Motion for Class Certification (Doc. 111)

On March 22, 2017, Plaintiff filed a motion to extend his deadline of March 31, 2017 to seek class certification because Plaintiff's renewed motion to compel was pending, and Defendant has not produced the discovery related to class certification. Doc. 111 at 1.   Defendant opposes this motion for extension by arguing that Plaintiff already has what he needs for class certification.   Doc. 114 at 1.   Furthermore, Defendant asserts that the requested extension is a fifth[2] extension of Plaintiff's extension to seek class certification.   *Id.*   Here, the Court finds that this motion is now moot because Plaintiff filed his motion for class certification.   Doc. 119. Furthermore, the Court notes that this action has been pending for approximately one year since April 28, 2016.   Doc. 1.   Since then, the Court granted three extensions of the deadline to seek class certification.   Docs. 26, 55, 72.

---

[2] The requested extension is a fourth extension of the deadline to seek class certification.   Docs. 26, 55, 72.

ACCORDINGLY, it is hereby

**ORDERED:**

1.      Defendant's Motion for a Protective Order (Doc. 111) is **GRANTED**.

2.       Plaintiff's Renewed Motion to Compel Defendant's Production of Discovery (Doc. 107) is **DENIED**.

3.      Defendant shall enter into a proposed stipulation (Doc. 104-6).

3.      Plaintiff's Time Sensitive Motion for Extension of Time for Plaintiff to File Motion for Class Certification (Doc. 111) is **DENIED as moot**.

**DONE** and **ORDERED** in Fort Myers, Florida on this 17th day of April, 2017.

CAROL MIRANDO
United States Magistrate Judge

Copies:
Counsel of record