UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

DONELL L. TILLMAN, individually and on behalf of all others similarly situated,

    Plaintiff,

v.    Case No: 2:16-cv-313-FtM-99CM

ALLY FINANCIAL INC.,

    Defendant.

## OPINION AND ORDER

This matter comes before the Court on defendant's unredacted[1] Motion for Summary Judgment, or in the Alternative, Partial Summary Judgment (Doc. #88) filed on February 6, 2017. Plaintiff's Response in Opposition (Doc. #86) was filed on February 7, 2017. Defendant submitted supplemental authority (Doc. #98) on February 22, 2017. For the reasons set forth below, the motion is denied.

This is a consumer-protection case arising from the receipt of autodialed calls to a cellular phone without consent. On April 28, 2016, plaintiff Donell L. Tillman (plaintiff or Tillman) filed a one-count class-action complaint, alleging that defendant Ally Financial, Inc. (defendant or Ally) violated the Telephone

---

[1] This motion and its exhibits were initially filed in a redacted version (Doc. #73) and duplicate, unredacted versions were filed under seal (Doc. #88). The seal was lifted based upon agreement of the parties (Doc. #94).

Consumer Protection Act (TCPA), 47 U.S.C. § 227, by placing unauthorized calls to a cellular phone using an "automatic telephone dialing system" (ATDS). (Doc. #1.)

On November 30, 2016, the Court denied defendant's Motion to Dismiss Complaint and Strike Class Allegations, finding in relevant part that plaintiff had Article III standing to maintain this action in light of the Supreme Court's recent decision in Spokeo, Inc. v. Robins, 136 S. Ct. 1540 (2016). (Doc. #58, Tillman v. Ally Financial, Inc., Case No. 2:16-cv-313-FtM-99CM, 2016 WL 6996113 (M.D. Fla. Nov. 30, 2016)). Defendant now moves for summary judgment on the grounds that plaintiff lacks "statutory standing" to assert a claim under the TCPA because he is not a "called party." Defendant also re-raises Article III standing, arguing that plaintiff is unable to prove that any of defendant's calls caused him concrete harm that is fairly traceable to Ally.

**I.**

As alleged in the Complaint, in December 2015, plaintiff began receiving calls on his cellular phone from Ally seeking to reach an individual named Phillip Everett (Everett). Plaintiff is not a party to any debt, contract, or obligation with Ally, and has never provided his cellular telephone number to Ally for any purpose. On at least one occasion in December 2015, plaintiff notified Ally that he was not Everett, that Everett could not be reached at the number, and requested that Ally cease further calls.

Despite this, Ally continued to call Tillman approximately 22 times throughout January, February, and March of 2016, and several of the calls were placed using an artificial or pre-recorded voice message. If plaintiff did not answer, sometimes a pre-recorded voicemail was left. The Complaint alleges the following harm as a result of these calls:

> Ally has caused consumers actual harm, not only because consumers were subjected to the aggravation that necessarily accompanies these calls, but also because consumers frequently have to pay their cell phone service providers for the receipt of such calls; such calls are also an intrusion upon seclusion, diminish cellular battery life, and waste time.

(Doc. #1, ¶ 40.) Plaintiff does not allege that he was charged for the unwanted calls.

The following material factual details are generally undisputed: Plaintiff obtained the telephone number ending in -5001[2] ("No. 5001" or "Phone") in November 2015 from MetroPCS when he upgraded his cellular phone. (Doc. #86-2 at 38:4-8; 48:16-49:4.) At all times relevant to this case, No. 5001 was one of two phone numbers on a MetroPCS family plan account in the name of Joseph Charles, who is the father of plaintiff's girlfriend, Charnelle Charles. (Id. at 17:17; 24:19-22; 26:23-27:4.)

Although sometimes inconsistent in deposition testimony, plaintiff generally testified that he is the main user of the

---

[2] Although the phone number is oftentimes redacted throughout the record, in other instances it is not.

Phone, but his girlfriend occasionally takes the Phone for a "day or two" and uses it when plaintiff does not need it. (Doc. #86-2 at 61:22-62:11 ("it's not her phone. So I wouldn't say we really share the phone"); 67:11-14; 37:18-38:1 (referring to the Phone as "my cell phone"). Plaintiff elsewhere stated in his deposition testimony that Charnelle "uses the phone, but does not take it." (Id. at 179:6-10.) Plaintiff could not remember whether Charnelle ever had the Phone in her possession during the timeframe in which plaintiff alleges he received the 22 unwanted calls from Ally. (Id. at 179:23-180:1.) Charnelle's mother and brother would occasionally call her at No. 5001. (Id. at 69:23-70:4.) Plaintiff provides No. 5001 to his employers so that they may reach him, and he provides the number to his children's mothers. (Id. at 36:1-5; 37:13-15.) Plaintiff and Charnelle "split the bill" when paying the monthly charges for the Phone, but sometimes plaintiff would pay the entire bill. (Id. at 25:1-9; 65:9-24.) To plaintiff's knowledge, Joseph Charles does not pay any of the charges for the family plan account. (Id. at 27:5-8.)

Plaintiff began receiving calls from Ally "as soon as he got the phone," asking to speak with Everett. (Doc. #86-2 at 70:16-22; 71:6-22.) Sometimes the call was automated and a voicemail was left. (Id. at 72:12-18; 74:15-18.) Plaintiff remembers answering two of the calls and telling Ally they had the wrong number. (Id. at 72:23-24; 76:1-6; 101:8-10.) In or about the end

of 2015 or the beginning of 2016, plaintiff downloaded an application called Metro Block It ("Block It") to prevent receipt of Ally's unwanted calls. (Id. at 76:18-25.) Plaintiff paid for the application after a free trial period. (Id. at 78:1-24.) Plaintiff added Ally's number to Block It on January 30, 2016, after receiving a call from Ally. (Id. at 76:18-25; 86:17-25; 87:1-22.) MetroPCS's records show that plaintiff received 22 calls from Ally between January 30, 2016 and March 31, 2016. (Doc. #88-3.)

Although Block It's advertisements state that blocked numbers are immediately disconnected and voicemails cannot be left (Doc. #88-3), the testimony of both plaintiff and the corporate representative of First Orion (the maker of Block It) established that calls from blocked numbers can still be received and still go to voicemail. Plaintiff testified that the Phone would alert him when a blocked number was calling by making a sound and flashing on the screen, (Doc. #86-2 at 107:18-22; 120:10-24; 122:18-20; 122:25-123:25), and plaintiff testified that he would still receive voicemails from blocked calls. (Id. at 214:11-12.)

David Rateliff, corporate representative for First Orion, testified that some versions of Block It and some cellular phone operating systems do not allow a blocked call to be disconnected; rather, the call is sent to voicemail. And in later versions of the application, the user has the choice of whether the call is

disconnected immediately or sent to voicemail.³ (Doc. #86-3 at 2:1-4; Doc. #88-7 at 12:3-8.) Mr. Rateliff confirmed that users might hear a partial ring and the phone might light up when a call from a blocked number comes in. (Doc. #86-3 at 3:15-18; 4:15-17; 5:10-13.)

**II.**

A court may grant summary judgment only if satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it goes to "a legal element of the claim under the applicable substantive law" and thus may impact the case's outcome. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1260 (11th Cir. 2004).

"The burden of establishing that there is no genuine issue of material fact lies with the moving party." Walker v. Darby, 911 F.2d 1573, 1576 (11th Cir. 1990) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986)). "[O]nce the moving party has met that burden by presenting evidence which, if uncontradicted, would entitle it to a directed verdict at trial," the party opposing

---

³ The record does not state which version of Block It was used by Tillman during the relevant time period.

summary judgment must "set forth specific facts showing that there is a genuine issue for trial. A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Id. at 1576–77. In ruling on the motion, the court must view all evidence and draw all reasonable inferences in favor of the non-moving party. Scott v. Harris, 550 U.S. 372, 380 (2007); Tana v. Dantanna's, 611 F.3d 767, 772 (11th Cir. 2010).

Summary judgment should be denied not just where the parties disagree on issues of material fact, but also "where the parties agree on the basic facts, but disagree about the factual inferences that should be drawn from these facts." Warrior Tombigbee Transp. Co. v. M/V Nan Fung, 695 F.2d 1294, 1296 (11th Cir. 1983); see also Allen v. Bd. of Pub. Educ., 495 F.3d 1306, 1315 (11th Cir. 2007) ("If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant summary judgment."). Put simply, if the resolution of a material fact or the inference to be drawn therefrom presents a "he said, she said" scenario, and if the record has evidence genuinely supporting both sides of the story, then summary judgment is not appropriate.

# III.

## A. "Statutory Standing" Under the TCPA

The Complaint alleges that defendant's conduct violated 47 U.S.C. § 227(b)(1)(A)(iii). (Doc. #1, ¶ 34.) This provision of the TCPA provides in pertinent part that

> [i]t shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—
>
> (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice —
>     ...
>
> (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call....

47 U.S.C. § 227(b)(1)(A)(iii). The statute also creates a "private right of action" which authorizes "a person or entity" to bring a claim to enjoin violation of the statute, or "to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater" or both such actions. 47 U.S.C. § 227(b)(3)(A), (B), (C). Thus, a private person may bring an action in federal or state court to seek redress for violations of the TCPA. Mims v. Arrow Fin. Servs., LLC, 565 U.S. 368, 371 (2012).

Defendant challenges plaintiff's "statutory standing" to assert the TPCA claim. The Supreme Court noted in Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S. ___, ___, 134 S. Ct. 1377 (2014), that the longstanding doctrinal label of "statutory standing" (also called "prudential standing") is misleading. The question is whether the statute grants the plaintiff the cause of action that he asserts. Id. at 1387. In answering this question, the Court "presume[s] that a statute ordinarily provides a cause of action 'only to plaintiffs whose interests fall within the zone of interests protected by the law invoked.'" Bank of Am. Corp. v. City of Miami, Fla., ___ S. Ct. ___, 2017 WL 1540509, at *6 (May 1, 2017) (quoting Lexmark, 134 S. Ct. at 1388). This inquiry is not a matter of standing, because "the absence of a valid ... cause of action does not implicate subject-matter jurisdiction, i.e., the court's statutory or constitutional power to adjudicate the case." Lexmark, 134 S. Ct. at 1387 n.4 (quoting Verizon Md. Inc. v. Public Serv. Comm'n of Md., 535 U.S. 635, 642–43 (2002)). Instead, it is "a straightforward question of statutory interpretation." Id. at 1388.

Defendant argues that is it is entitled to summary judgment as a matter of law because plaintiff was not a "called party" under the TCPA. This is so, defendant argues, because plaintiff was not the subscriber of the cellular phone service, nor even the primary

user of the Phone. But this argument focuses on the wrong portion of the statute.

Any "person" whose interests fall within the zone of interests protected by the TCPA provision has statutory standing to bring a claim if there is a prohibited telephone call. 47 U.S.C. § 227(b)(3). Under the relevant portion of the TCPA, a prohibited telephone call is one made by any person within the United States using any automatic telephone dialing system or an artificial or prerecorded voice to any cellular telephone service. 47 U.S.C. § 227(b)(1)(A)(iii). Exempted from this prohibition is a call made for emergency purposes or made with the prior express consent of the "called party."[4] Id. Thus, being a "called party" is only relevant to the determination of whether the call violates the substantive provision of the TCPA; the term does not impact who may bring a lawsuit for TCPA violations.

Plaintiff established that he routinely received calls on the Phone, paid the bills, treated the Phone as his own, and that he received unwanted ATDS calls from Ally on the Phone. This brings

---

[4] In the Eleventh Circuit, the "called party" is the subscriber of the cell phone service. Breslow v. Wells Fargo Bank, N.A., 755 F.3d 1265, 1267 (11th Cir. 2014); Osorio v. State Farm Bank, F.S.B., 746 F.3d 1242, 1251 (11th Cir. 2014) (the subscriber is "the person who pays the bills or needs the line in order to receive other calls"). Thus, if Joseph Charles had consented to such calls as the subscriber, plaintiff would not have a cause of action, not because of a lack of statutory standing, but because the calls would not have been prohibited by this portion of the statute.

plaintiff within the zone on interests protected by the TCPA sufficient to give him statutory standing. See, e.g., Manno v. Healthcare Revenue Recovery Group, LLC, 289 F.R.D. 674, 682 (S.D. Fla. 2013) (citing cases).

**B. Article III Standing**

Even a plaintiff who has statutory standing (i.e., has stated a cause of action) must have constitutional standing to bring the claim. Defendant argues that the Complaint should be dismissed because plaintiff lacks Article III standing. Specifically, defendant asserts that plaintiff cannot establish standing for any calls for which he has not suffered harm, such as calls that he did not receive or those of which he was not aware. Plaintiff responds that the Court has already decided this issue in its previous Opinion and Order denying defendant's motion to dismiss for lack of Article III standing. Tillman, 2016 WL 6996113.

Constitutional standing always remains a "live" issue in a case, and may be asserted at virtually any stage of the proceedings. Arbaugh v. Y&H Corp., 546 U.S. 500, 506 (2006)("The objection that a federal court lacks subject-matter jurisdiction may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment." (internal citation omitted)). Thus, the Court's determination at the motion to dismiss stage does not compel the same result at the summary judgment stage. Even though raised

at the summary judgment stage, however, subject matter jurisdiction is treated as a request for dismissal under Fed. R. Civ. P. 12(b)(1). Aqua Log, Inc. v. Lost & Abandoned Pre-Cut Logs and Rafts of Logs, 709 F.3d 1055, 1058 (11th Cir. 2013).

To establish Article III standing, a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Spokeo, 136 S. Ct. at 1547 (citing Lujan v. Defs. of Wildlife, 504 U.S. 555, 560–61 (1992)). See also Bank of America Corp., 2017 WL 1540509, at *6; Nicklaw v. Citimortgage, Inc., 839 F.3d 998, 1001–02 (11th Cir. 2016). Defendant asserts that plaintiff fails to sufficiently establish the first and second requirements of constitutional standing.

**(1) Injury In Fact**

Defendant argues that plaintiff must establish standing for each of the 22 unwanted calls, which he cannot do because he did not receive and/or was unaware of some of them. Defendant believes that calls made to the Phone while plaintiff was not using it and calls that were blocked by Block It could not have harmed plaintiff. (Doc. #88-3.)

For standing purposes, the alleged injury must consist of "'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or

hypothetical.'" Spokeo, 136 S. Ct. at 1548 (quoting Defs. of Wildlife, 504 U.S. at 560). This standard applies regardless of whether the alleged injury is tangible or intangible. Id. at 1549; Sierra Club v. Morton, 405 U.S. 727, 738 (1972). The Eleventh Circuit has summarized Spokeo as follows:

> In Spokeo, the Supreme Court vacated the decision of the Court of Appeals and remanded the issue of whether a plaintiff sufficiently alleged a concrete injury where the plaintiff claimed a statutory violation of the Fair Credit Reporting Act ("FCRA"). 136 S. Ct. at 1545–46. The plaintiff alleged that a website had published inaccurate information about him. Id. at 1544. The Supreme Court emphasized that in addition to being particularized, intangible injuries, including statutory violations, must still be concrete. Id. at 1548 ("A 'concrete' injury must be 'de facto'; that is, it must actually exist."). The Supreme Court stated that "both history and the judgment of Congress play important roles" in determining whether an intangible harm is concrete, explaining that "it is instructive to consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." Id. at 1549. The Supreme Court held that the plaintiff there had only alleged a "bare procedural violation" of the FRCA because the violation, on its own, may not cause any harm or present a material risk of harm. Id. at 1550.

Perry v. Cable News Network, Inc., ___ F.3d ___, 2017 WL 1505064, at *2 (11th Cir. Apr. 27, 2017).

In Perry, plaintiff brought suit under the Video Privacy Protection Act (VPPA)[5] and did not allege any additional harm beyond the statutory violation. The Eleventh Circuit held that this was sufficient to allege a concrete injury for standing purposes. The Court found that the structure and purpose of the VPPA provided actionable rights, and that violation of the VPPA constituted a concrete harm. Id. at *3.

In Church v. Accretive Health, Inc., 654 F. App'x 990 (11th Cir. 2016), the Eleventh Circuit examined whether a plaintiff had standing to bring a claim under the FDCPA arising from receipt of a letter advising her that she owed a debt, but not including certain disclosures required by the FDCPA. The Eleventh Circuit first addressed defendant's argument that "Church's injury [was] not sufficiently concrete to support Article III standing because Church incurred no actual damages from Accretive Health's violation of the FDCPA." Id. at 992. The Eleventh Circuit stated:

> The FDCPA creates a private right of action, which Church seeks to enforce. The Act requires that debt collectors include certain disclosures in an initial communication with a debtor, or within five days of such communication. The FDCPA authorizes an aggrieved debtor to file suit for a debt collector's failure to comply with the Act.

---

[5] The VPPA prohibits the wrongful disclosure by a video tape service provider of video tape rental or sale records, and creates a cause of action for "[a]ny person aggrieved by any act of a person in violation of this section." 18 U.S.C. § 2710(c)(1).

> Thus, through the FDCPA, Congress has created a new right — the right to receive the required disclosures in communications governed by the FDCPA — and a new injury — not receiving such disclosures.
>
> It is undisputed that the letter Accretive Health sent to Church did not contain all of the FDCPA's required disclosures. Church has alleged that the FDCPA governs the letter at issue, and thus, alleges she had a right to receive the FDCPA-required disclosures. Thus, Church has sufficiently alleged that she has sustained a concrete — i.e., "real" — injury because she did not receive the allegedly required disclosures. The invasion of Church's right to receive the disclosures is not hypothetical or uncertain; Church did not receive information to which she alleges she was entitled. While this injury may not have resulted in tangible economic or physical harm that courts often expect, the Supreme Court has made clear an injury need not be tangible to be concrete. Rather, this injury is one that Congress has elevated to the status of a legally cognizable injury through the FDCPA. Accordingly, Church has sufficiently alleged that she suffered a concrete injury, and thus, satisfies the injury-in-fact requirement.

Id. at 994-95 (internal footnotes and citations omitted).

The Court finds a similar result in this case. Congress has prohibited the making of certain prohibited calls, and plaintiff has a right under the TCPA to be free of such prohibited calls. The Court finds that receipt of such calls made in violation of the statute is an injury that Congress has elevated to the status of a legally cognizable injury through the TCPA.

<tt>- 15 -</tt>

The record clearly establishes that at least some (if not all) of the 22 calls at issue <u>were not</u> in fact "blocked" by Block It. Plaintiff testified that even if the calls were "blocked" by Block It, he still received both an auditory and on-screen notification that the call from Ally was coming in and then the calls went to voicemail. This testimony was supported by First Orion's corporate representative. Thus, contrary to defendant's argument, the Phone did "receive" these calls, even if plaintiff did not answer them. Even if plaintiff was away from his Phone at the time of the unwanted call and the call went to voicemail, plaintiff would still receive notification of a voicemail and plaintiff would sometimes listen to the voicemails.[6] In any scenario, plaintiff would have been aware of the calls because they were not completely blocked, which is an intrusion upon seclusion that the Court previously identified as sufficient to establish Article III standing. See, e.g., <u>Palm Beach Golf Garden-Boca, Inc. v. John G. Sarris, D.D.S., P.A.</u>, 781 F.3d 1245, 1252 (11th Cir. 2015) (transmission of fax advertising was sufficient even if not seen or printed by recipient).

---

[6] Ally argues that plaintiff must have been aware of the call when it occurred to be harmed, citing <u>Romero v. Dep't Stores Nat'l Bank</u>, 199 F. Supp. 3d 1256 (S.D. Cal. 2016). The Court disagrees. Although hearing the phone ring and being interrupted might be more of an intrusion, noticing that a voicemail was left or that numerous calls were missed can be intrusive as well.

The Court here, like Palm Beach, has found that the record shows that transmission of the unwanted call would notify plaintiff that Ally was attempting to contact him, which is an intrusion upon seclusion that is an injury intended to be prevented by the statute. See Tillman, 2016 WL 6996113, at *4. The FCC has stated that "[t]he intent of Congress, when it established the TCPA in 1991, was to protect consumers from the nuisance, invasion of privacy, cost, and inconvenience that autodialed and prerecorded calls generate. Congress found that consumers consider these kinds of calls, 'regardless of the content or the initiator of the message, to be a nuisance and an invasion of privacy.'" Rules & Regulations Implementing the TCPA, 30 F.C.C.R. 7961, 7979-80 (July 10, 2015) (quoting S. Rep. No. 102-178, 1st Sess., 102nd Cong. (1991) at 2, 4-5).

Finally, defendant argues that plaintiff cannot show an injury in fact because Tillman was not charged for the calls. Defendant acknowledges that the Eleventh Circuit has held that a party need not be charged for a call to have "statutory standing" under the TCPA, Osorio, 746 F.3d at 1258, but defendant believes that the lack of economic harm undercuts any real, concrete harm required for Article III standing. Plaintiff responds that he did pay for Block It in an attempt to stop Ally's unwanted calls. Because an economic injury is not required for Article III standing, this argument fails. The actual or threatened injury

required by Article III may exist solely by virtue of statues creating legal rights, the invasion of which creates standing. Spokeo, 136 S. Ct. at 1549-50 (citing Federal Election Comm'n v. Akins, 524 U.S. 11, 20–25 (1998) (confirming that a group of voters' "inability to obtain information" that Congress had decided to make public is a sufficient injury in fact to satisfy Article III); Public Citizen v. Dep't of Justice, 491 U.S. 440, 449 (1989) (holding that two advocacy organizations' failure to obtain information subject to disclosure under the Federal Advisory Committee Act "constitutes a sufficiently distinct injury to provide standing to sue")). Furthermore, the statute actually contemplates a lack of actual damages, since it gives plaintiff the option of seeking actual or statutory damages of $500 per violation. 47 U.S.C. § 227(b)(3).

**(2) Fairly Traceable**

The Court next determines whether plaintiff's injury is fairly traceable to Ally's action. See Bank of Am. Corp., 2017 WL 1540509, at *6. This requirement is satisfied when the claimed injury flows from defendant's conduct. Mulhall v. UNITE HERE Local 355, 618 F.3d 1279, 1290 (2010). "Even a showing that a plaintiff's injury is indirectly caused by a defendant's actions satisfies the fairly traceable requirement." Resnnick v. AvMed, Inc., 693 F.3d 1317, 1324 (11th Cir. 2012).

Plaintiff's allegations are sufficient to "fairly trace" his injuries to Ally's unwanted calls. Although defendant argues that plaintiff could not have been harmed by Ally's calls that did not receive, or was unaware of, as the Court has discussed, the record shows that the calls were not in fact blocked, and that plaintiff was otherwise aware of nearly all of the 22 calls, undisputedly placed by Ally without consent. Thus, plaintiff has satisfied this element of standing.

Accordingly, it is hereby

**ORDERED AND ADJUDGED:**

1. Defendant's Motion for Summary Judgment, or, in the Alternative, Partial Summary Judgment (Doc. #88) is **DENIED.**

2. The Clerk is directed to **terminate** Defendant's Motion for Summary Judgment, or, in the Alternative, Partial Summary Judgment (Doc. #73), as it is duplicative of Doc. #88.

**DONE and ORDERED** at Fort Myers, Florida, this ___11th___ day of May, 2017.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Counsel of Record